ROBERT A. GRIFFITH, A MINOR BY HIS GUARDIAN AD LITEM, RENEE
    CROSSWHITE GRIFFITH, PLAINTIFF v. JAMES SHIELDS McCALL, II,
    DEFENDANT

No. 9322SC447

(Filed 5 April 1994)

1. **Evidence and Witnesses § 2366 (NCI4th)— automobile accident—accident reconstruction analyst—testimony admissible**

    The trial court in an automobile accident case properly admitted testimony from an accident reconstruction analyst where the witness holds a B.S. in civil engineering and an M.S. in civil engineering, with a major in traffic engineering; is a registered professional engineer and was previously a consulting engineer in the area of traffic engineering; currently concentrates exclusively in the field of forensic traffic engineering or accident reconstruction; and has performed accident reconstruction analyses previously. His testimony clearly could assist the jury in the determination of the issues in this case; it is the function of cross-examination to expose any weaknesses in expert opinion testimony. N.C.G.S. § 8C-1, Rule 702.

    **Am Jur 2d, Expert and Opinion Evidence § 345.**

    **Admissibility of opinion evidence as to the cause of an accident or occurrence. 38 ALR2d 13.**

2. **Automobiles and Other Vehicles § 571 (NCI4th)— pushing disabled car—struck from rear—last clear chance**

    The trial court properly instructed the jury and submitted the issue of last clear chance to the jury where plaintiff was struck from the rear by defendant's car while pushing a disabled vehicle along a road. Plaintiff's accident reconstruction analyst testified that the stopping distance for a vehicle traveling at the speed of defendant's vehicle was 214 to 246 feet and that the disabled vehicle would have been visible from plaintiff's vehicle, with low-beam headlights under the conditions then present, at a distance of 250 feet.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 438, 439.**

    **Applicability of last clear chance doctrine to collision between moving and stalled, parked, or standing motor vehicle. 34 ALR3d 570.**

GRIFFITH v. McCALL

[114 N.C. App. 190 (1994)]

Appeal by defendant from judgment entered 11 September 1992 by Judge A. Leon Stanback in Iredell County Superior Court. Heard in the Court of Appeals 8 February 1994.

*Tim L. Harris & Associates, by T. Scott White, for plaintiff-appellee.*

*Kluttz, Reamer, Blankenship & Hayes, by Richard R. Reamer and James F. Randolph, for defendant-appellant.*

JOHNSON, Judge.

Plaintiff Robert A. Griffith brought a negligence action against defendant James Shields McCall, II for damages arising out of an automobile accident where defendant was driving an automobile which struck plaintiff. Plaintiff was a minor at the time of the accident and brought this action through his guardian ad litem, Renee Crosswhite Griffith.

Testimony presented at trial showed the following: On 6 March 1990, plaintiff was driving a car south on US 321 just south of Blowing Rock, North Carolina. A passenger, Shawn Parks, was in the car with plaintiff. As plaintiff drove, he saw a vehicle parked partially off the northbound lane of US 321 flashing its headlights on and off. Plaintiff and Mr. Parks decided to stop and see if the driver of the car needed any assistance. This section of US 321 is two lanes and the speed limit is 55 miles an hour.

Plaintiff pulled his car off of the southbound lane of travel onto the shoulder of the road with the tires of his car either on the white line marking the outside edge of the lane or on the area of pavement extending beyond the white line and southbound lanes. Plaintiff turned off his car headlights and engine and turned on his car's emergency flashers. There was disputed testimony as to how far south of the disabled vehicle plaintiff's car was parked.

Plaintiff and Mr. Parks walked to the disabled vehicle which was being driven by Mrs. Wilma Winebarger. Mrs. Winebarger's car's emergency flashers were on and the vehicle was parked fifteen feet south of a pull-off area. When plaintiff and Mr. Parks asked Mrs. Winebarger if they could help, she replied that her car had stalled out and asked if they could push her car to the pull-off area. Plaintiff and Mr. Parks went to the rear of Mrs. Winebarger's car to push; plaintiff was pushing on the driver's side rear of the vehicle and Mr. Parks was pushing on the right side rear

of the vehicle. As they pushed, both plaintiff's and Mr. Parks' hands were shoulder width apart and they stood fairly close to each other. The width of the back of Mrs. Winebarger's car was five feet and eight inches. Mr. Parks recalled that the car's emergency flashers were in the area of his chest as they pushed.

Plaintiff and Mr. Parks attempted unsuccessfully to push the vehicle while it was in "neutral" as cars passed by in both directions. Finally, they yelled to Mrs. Winebarger to put the vehicle in "park." As Mrs. Winebarger put the vehicle in "park," Mr. Parks looked down and saw lights on the calves of his legs. He stood erect, turned around, saw car lights approaching and yelled "Bobby" to plaintiff. Mr. Parks heard the squeal of tires, jumped out of the way to avoid being hit, and saw plaintiff being struck by the approaching vehicle. Plaintiff remembers the tires squealing and then laying in the road. Plaintiff's injuries resulted in an amputation of his right leg at the knee and a fractured left ankle.

Defendant testified that he was driving a 1988 Volkswagen Fox and that he had his car headlights on, but could not be sure if they were on low or high beam; that this drive was part of his daily routine; that he knew the section of US 321 in which the accident occurred was curvy; and that at other times he had seen disabled vehicles on US 321. Defendant further testified that as he traveled north, driving upward through a curve and then to the area where the accident occurred, his attention was first on plaintiff's parked vehicle to his left; that he expected a person to come from behind that vehicle to flag him for assistance; that when he returned his gaze to the northbound lane, he noticed an object; that he began backing off the gas, putting his foot on the brake and turning to the left; that he could not identify the object; that he next saw plaintiff turned around and that it was then that he realized it was a person pushing a car; that at that point, he hit his brakes, swerved the wheel fully to the left and skidded into plaintiff. Defendant noted that it was no more than four seconds from the first time he saw the emergency flashers on the plaintiff's parked car to the point of impact. The skid marks left by defendant's vehicle leading to the point of impact measured approximately 72 feet. It was dark at the time of the accident, the sky was clear and the pavement was dry.

An accident reconstructionist, Mr. William T. Jackman, testified at trial for plaintiff. Mr. Jackman opined that Mrs. Winebarger's

vehicle would have been visible and discernible to defendant, driving a 1988 Volkswagen Fox using low beam headlights, at a distance of 250 feet, under the conditions existing at the time of the accident. Mr. Jackman further testified that in preparation for his expert testimony he used the accident report, a photograph of Mrs. Winebarger's vehicle, photographs of the accident scene with measurements, depositions and statements of witnesses, and aerial photographs; that he visited the scene of the accident for the first time the day before testifying; that in his line of work, he takes all of this information and tries to develop the scenario that best fits the data; that information he used about 1988 Volkswagen Fox car headlights was information he obtained from a dealer and he did not know what specific brand of headlights was on defendant's 1988 Volkswagen Fox; that stopping distances do not depend on the type of car that is being driven; that he conservatively assumed for purposes of his reconstruction that the emergency flashers on Mrs. Winebarger's vehicle were blocked by plaintiff and Mr. Parks as they attempted to push the car; that the average perception-reaction time of an individual is one second; and that he was not aware how far Mrs. Winebarger's vehicle was on or off the road.

The judgment noted that the jury answered the following issues, to-wit:

1. Was the plaintiff, Robert A. Griffith, injured and damaged as a result of the negligence of the defendant, James Shields McCall, II?

ANSWER: Yes.

2. Did the plaintiff, Robert A. Griffith, by his own negligence, contribute to his injury or damages?

ANSWER: Yes.

3. Did the defendant, James Shields McCall, II, have the last clear chance to avoid the plaintiff's injury or damages?

ANSWER: Yes.

4. What amount, if any, is the plaintiff, Robert A. Griffith, entitled to recover for personal injuries?

ANSWER: $350,000.00.

Defendant's motions for judgment notwithstanding the verdict and for a new trial were denied by the trial court. Defendant filed timely notice of appeal to our Court.

[1] Defendant brings forth two assignments of error. Defendant first argues that the trial court erred in allowing the testimony of plaintiff's accident reconstructionist, Mr. Jackman.

We turn to North Carolina General Statutes § 8C-1, Rule 702 (1992), which states "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." The expert's opinion must be of assistance to the trier of fact in order to be admissible. *State v. Jackson*, 320 N.C. 452, 358 S.E.2d 679 (1987). "Whether the witness qualifies as an expert is exclusively within the trial judge's discretion . . . 'and is not to be reversed on appeal absent a complete lack of evidence to support his ruling.' " *State v. Davis*, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993). "However, expert opinion is not helpful—and therefore is not admissible—if it is impossible for anyone, expert or nonexpert, to draw a particular inference from the evidence." *State v. Purdie*, 93 N.C. App. 269, 275, 377 S.E.2d 789, 792 (1989).

The facts herein show that Mr. Jackman holds a B.S. in civil engineering and an M.S. in civil engineering, with a major in traffic engineering; that he is a registered professional engineer and was previously a consulting engineer in the area of traffic engineering; that he currently concentrates exclusively in the field of forensic traffic engineering or accident reconstruction; and that he has performed accident reconstruction analyses previously. We believe Mr. Jackman was properly qualified to serve as an expert, and his testimony was properly admitted as expert opinion testimony given his education and experience. The testimony which Mr. Jackman gave clearly could assist the jury in the determination of the issues in this case. We note that "[i]t is the function of cross-examination to expose any weaknesses in [expert opinion testimony.]" *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 244, 311 S.E.2d 559, 571 (1984). An examination of the transcript reveals that defendant's counsel used cross-examination to attack many of the points raised in defendant's brief. This assignment of error is overruled.

GRIFFITH v. McCALL

[114 N.C. App. 190 (1994)]

[2] Defendant's remaining assignment of error is that the trial court erred in instructing and submitting the issue of last clear chance to the jury. To be entitled to a jury instruction on last clear chance, plaintiff must prove the following four elements:

> (1) the [plaintiff], by his own negligence, placed himself in a position of helpless peril, (2) the defendant was aware of, or by the exercise of reasonable care should have discovered, plaintiff's perilous position and his incapacity to escape, (3) the defendant had the time and means to avoid injury to the plaintiff by the exercise of reasonable care after he discovered or should have discovered the situation, and (4) the defendant negligently failed to use the time and means available to avoid injuring the [plaintiff.]

*VanCamp v. Burgner*, 99 N.C. App. 102, 103, 392 S.E.2d 453, 454 (1990), *aff'd*, 328 N.C. 495, 402 S.E.2d 375 (1991) (citation omitted), *quoting Watson v. White*, 309 N.C. 498, 308 S.E.2d 268 (1983).

In the case *sub judice*, the jury found that plaintiff, by his own negligence, put himself in a position of helpless peril. Therefore, we address the question of whether defendant, by the exercise of reasonable care, should have discovered plaintiff's perilous position and plaintiff's incapacity to escape in time to avoid injury.

In *Sink v. Sumrell*, 41 N.C. App. 242, 249, 254 S.E.2d 665, 670 (1979), our Court stated "[i]n order for the last clear chance doctrine to apply, there must be evidence that a reasonable person under the conditions existing had the time and means to avoid injury to the imperiled person[.]" We find plaintiff herein presented such evidence in the form of Mr. Jackman's testimony. Mr. Jackman stated that the stopping distance for a vehicle traveling fifty-five miles an hour was in the range of two hundred and fourteen to two hundred and forty-six feet. Mr. Jackman then affirmed that it was his opinion to a reasonable degree of engineering certainty that at a distance of two hundred and fifty feet, Mrs. Winebarger's vehicle would have been visible to defendant driving a 1988 Volkswagen Fox using low-beam headlights under the conditions present and described at the scene of the accident on 6 March 1990 at approximately 7:30 p.m. *See also Hales v. Thompson*, 111 N.C. App. 350, 432 S.E.2d 388 (1993) (where evidence presented by accident reconstructionist supported a reasonable inference that defendant had the time and means to avoid accident). Therefore,

we find the trial court properly instructed and submitted the issue
of last clear chance to the jury.

No error.

Judges EAGLES and LEWIS concur.