STATE OF NORTH CAROLINA v. DAVID BARTLEY YEARWOOD

No. COA00-1307

(Filed 18 December 2001)

### 1. Evidence— child sexual assault victim—prior agency record—cross-examination of psychologist limited

The trial court did not abuse its discretion in a prosecution for first-degree statutory sexual offense with a child under 13, indecent liberties, and first-degree statutory rape in limiting defendant's cross-examination of the victim's psychologist by precluding any reference to evidence contained in agency records regarding allegations that the victim was exposed to sexual situations as a young child by her father. The psychologist testified on voir dire that she was aware of social services records involving the victim, but that she did not base her opinion that the victim's behavior was consistent with having been assaulted on· events occurring before the date of the alleged assault. Additionally, there was abundant evidence that the victim had been sexually assaulted and there was no evidence of another rapist; defendant merely claimed that exposure to her father's nudity years earlier could have caused the behavior referred to by the psychologist. Finally, there was no indication in the record that this evidence was relevant to the victim's credibility.

### 2. Evidence— audiotape—audible

The trial court did not abuse its discretion in a prosecution arising from a sexual assault on a child by admitting a videotape of a therapy session with the child where defendant contended · that the tape was largely inaudible.

### 3. Indecent Liberties; Sexual Offenses— unanimity of verdicts—more than one act

There was no plain error in a prosecution arising from the sexual abuse of a child where the court's instructions did not require unanimous verdicts regarding the sexual acts of first-

degree sexual offense and taking indecent liberties with a child. Indecent liberties proscribes any immoral, improper, or indecent liberty, so that a finding by some jurors of one type of sexual conduct and a findings by other jurors of another type of conduct would be sufficient. Similarly, a defendant may be convicted of first-degree sexual offense even if the trial court instructs the jury that more than one sexual act may comprise an element of the offense.

Appeal by defendant from judgments entered 30 March 2000 by Judge James C. Spencer, Jr., in Durham County Superior Court. Heard in the Court of Appeals 11 October 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.*

*Lisa Miles for defendant-appellant.*

MARTIN, Judge.

Defendant was charged with felony breaking or entering, first degree statutory sexual offense (with a child under 13), indecent liberties with a child, and first degree statutory rape (with a child under 13). Defendant entered a plea of not guilty.

Briefly summarized, the evidence at trial tended to show that the victim, "C.B.," who was twelve years old at the time of the events at issue, was at home alone on 23 July 1999 and answered the front door in response to defendant's knocking on the door. C.B. recognized defendant because he had mowed their lawn previously. C.B. told defendant that her mother was not home and for him to go away. He then pushed his way into the house. Defendant asked C.B. if she wanted a massage. At this point, C.B. was sitting in a chair and defendant knelt before her. He kissed her leg and put his hand on her leg. He then put his hand under her dress. C.B. closed her arms on her knees to keep her dress down, but defendant was able to get his other hand under her dress. C.B. testified that defendant massaged her back and then placed his hand on her breast. C.B. managed to free herself and ran to her mother's bedroom, where she attempted to call her mother at work. C.B. testified that defendant followed her and entered the bedroom "really mad." He took the phone from C.B. and told her he was going to "f—" her. Defendant grabbed her dress and ripped it, the force of which lifted C.B. off the bed. He ripped off her panties and, according to C.B.'s testimony, performed cunnilingus on

her. He then inserted his fingers inside her, and moments later inserted his penis.

C.B. testified that her mother came home and defendant got off her and began buttoning his pants. C.B.'s mother testified that she entered the bedroom and asked defendant what he was doing in her house. According to her testimony, defendant answered, "I just came by to—I didn't do nothing." Defendant left the house, and C.B.'s mother called 911.

Officer T.D. Douglass testified that he arrived at the scene while C.B.'s mother was on the phone with the 911 operator. He testified that C.B. was visibly upset and "crying uncontrollably." Officer Douglass stated that he heard C.B. explain that the perpetrator was a white male who had done yard work for their family; he also testified that either C.B. or her mother told the officers that the suspect's name was "Dave" and that he lived on Alabama Avenue. Later that day, Officer Douglass found defendant slumped in a chair on the front porch of his home on Alabama Avenue, smelling of alcohol. Following a struggle, Officer Douglass and two fellow officers were able to subdue defendant and arrest him.

Lynn Patterson, an employee for Durham County Emergency Medical Services, testified that on their way to the hospital C.B. told her that her clothes had been ripped off and that she had been penetrated vaginally. Winifred Walker, a sexual assault nurse examiner at Duke Hospital, testified that C.B. recounted the narrative of events at the beginning of the examination. Walker collected an SBI rape kit from C.B. and noticed a redness in her vaginal area. According to Walker, this redness indicated an irritation and it was her opinion that C.B. had been sexually assaulted.

Dr. Betty Phillips was permitted to testify as an expert in child psychology and testified that she was introduced to C.B. on 27 July 1999. Dr. Phillips stated that C.B. was extremely distressed and agitated when they met four days after the assault. It was Dr. Phillips' opinion that C.B.'s behavior was consistent with patterns observed in sexually assaulted victims. During *voir dire*, Dr. Phillips admitted that she was aware that C.B.'s mother claimed C.B. had lied to her in the past. She also admitted to some knowledge of alleged incidents involving C.B. and her father, where the father would allegedly strip in front of C.B. and expose her to pornographic material. The trial court permitted defendant to cross examine Dr. Phillips concerning C.B.'s alleged lying and stealing, but did not allow defend-

ant to explore the area of C.B.'s purported sexual abuse by her father, which allegedly occurred four to seven years prior to the present incident.

Defendant did not offer evidence. He was found guilty of felony breaking or entering, first degree statutory sexual offense, taking indecent liberties with a child, and first degree statutory rape. The trial court entered judgments on the verdicts imposing active terms of imprisonment. Defendant appeals.

Defendant brings forward six assignments of error in three separate arguments. Defendant has not presented arguments in support of the remaining thirteen assignments of error contained in the record on appeal and they are deemed abandoned. N.C.R. App. P. 28(b)(5).

I.

**[1]** Defendant first contends the trial court erred in limiting his cross examination of Dr. Betty Phillips, the victim's treating psychologist, by precluding reference to evidence contained in agency records regarding alleged past sexual abuse of C.B. Defendant argues the evidence is relevant to cast doubt on the credibility of Dr. Phillips. We reject this argument.

"A witness may be cross-examined on any matter relevant to any issue in the case." N.C. Gen. Stat. § 8C-1, Rule 611(b). A trial court, however, "has broad discretion over the scope of cross-examination." *State v. Call*, 349 N.C. 382, 411, 508 S.E.2d 496, 514 (1998) (citation omitted). Further, it is well settled in North Carolina that the trial court's rulings regarding the scope of cross examination "will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination." *State v. Woods*, 307 N.C. 213, 221, 297 S.E.2d 574, 579 (1982) (citations omitted).

In the present case, defendant has made no showing that the trial court's limitation of the cross examination of Dr. Betty Phillips could have improperly influenced the jury's verdict. Defendant sought permission to cross examine Dr. Phillips regarding agency records which indicated that C.B. had been exposed to potentially abusive sexual situations years earlier involving her father when C.B. was between the ages of five and eight. Defendant suggests this exposure may have been the cause of C.B.'s behavior which led Dr. Phillips to conclude that C.B. had been sexually assaulted. During *voir dire*, Dr. Phillips

stated that she was aware social services records existed involving C.B. and her father, but that she did not base her opinion that C.B.'s behavior was consistent with victims of sexual assault on any events occurring before 23 July 1999. The trial court permitted defendant to cross examine Dr. Phillips regarding information indicating that C.B. may have lied to her mother in the past, but denied defendant's request to introduce any evidence that C.B. was exposed to sexual situations as a younger child, finding there was no evidence C.B. was touched, fondled, or molested beyond the allegations of exposure to nudity listed above.

Dr. Phillips testified that C.B. was very distressed and traumatized in the days following 23 July 1999, and that she could not sleep or control her anger. Dr. Phillips explained that she arrived at the conclusion that C.B. had been sexually assaulted based on interviews with C.B. and C.B.'s mother, as well as making observations about the victim's behavior during 29 therapy sessions. Although Dr. Phillips testified that C.B. exhibited behavior consistent with victims of sexual assault, she did not testify as to the identity of the perpetrator.

In addition, there was abundant evidence, even without the testimony of Dr. Phillips, that C.B. had been sexually assaulted. Officer Douglass testified that he arrived at the scene while C.B.'s mother was on the phone with the 911 operator and that C.B. was visibly upset and "crying uncontrollably." Officer Douglass overheard C.B. explain that the perpetrator was a man named "Dave" who had done yard work for their family. Lynn Patterson, an employee for Durham County Emergency Medical Services, testified that on their way to the hospital C.B. told her that her clothes had been ripped off and that she had been penetrated vaginally. Nurse Winifred Walker testified that she conducted an SBI rape kit on the victim on 23 July 1999 and noticed a redness in her vaginal area. Walker testified that this redness indicated an irritation and that it was her opinion that C.B. had been sexually assaulted. This evidence was more than adequate to support the conclusion that C.B. had been the victim of a sexual assault, and the trial court's limitation of the scope of cross examination of the State's expert witness could not have improperly influenced the jury's verdict.

The facts of this case are easily distinguished from the facts of State v. Ollis, 318 N.C. 370, 348 S.E.2d 777 (1986). In Ollis, the trial court did not permit the defendant to cross examine the victim

regarding her testimony, given at an in-camera hearing, that another individual raped her on the same day that the defendant allegedly raped her. Because this second alleged rape could have provided an alternate explanation for the medical evidence of the rape, the Supreme Court granted the defendant a new trial. *See* N.C. Gen. Stat. § 8C-1, Rule 412(b)(2). No evidence of another rapist was presented by defendant in the present case; rather, defendant merely claimed that C.B.'s exposure to her father's nudity years earlier could have caused the behavior which led the State's expert witness to conclude that C.B. had been sexually assaulted. In addition, although the evidence in the agency records was not excluded by North Carolina Rule of Evidence 412, which is concerned with the sexual *activity* of the complainant, the trial court nevertheless did not abuse its discretion in refusing to permit defendant from introducing such evidence because there is no indication in the record that this evidence was relevant to C.B.'s credibility. *See State v. Thompson,* 139 N.C. App. 299, 533 S.E.2d 834 (2000). Defendant's argument is overruled.

## II.

[2] Defendant next contends the trial court erred in admitting into evidence a videotape of a therapy session interview between C.B. and Dr. Phillips. He contends that the tape was largely inaudible and, therefore, could have served no corroborative purpose. We discern no abuse of discretion in admitting the videotape.

A witness' prior statements may be admitted to corroborate the witness' trial testimony. *State v. Gell,* 351 N.C. 192, 524 S.E.2d 332, *cert. denied,* 531 U.S. 867, 148 L. Ed. 2d 110 (2000). To be admissible at trial, a tape recording of a prior statement must be audible and properly authenticated. *State v. Womble,* 343 N.C. 667, 473 S.E.2d 291 (1996), *cert. denied,* 519 U.S. 1095, 136 L. Ed. 2d 719 (1997). "Whether a tape recording is sufficiently audible to be admitted is a matter left to the discretion of the trial court." *Id.* at 689, 473 S.E.2d at 303 (citation omitted).

> The general rule is that the fact that a recording may not reproduce an entire conversation or may be indistinct or inaudible in part does not render it inadmissible unless the defects are so substantial as to leave the recording without probative value or to render the recording as a whole untrustworthy.

*State v. Hammette,* 58 N.C. App. 587, 590, 293 S.E.2d 824, 826-27 (1982) (citations omitted).

In the present case, the videotaped interview between Dr. Betty Phillips and the victim, C.B., was made part of the record on appeal by stipulation. After reviewing this videotape, which appears to us to be sufficiently audible, we note that it was within the trial court's authority to determine whether it was sufficiently audible to be admitted at trial, and we hold the trial court did not abuse its discretion by admitting the recording of the victim's interview to corroborate the victim's trial testimony. Defendant's assignment of error is overruled.

### III.

**[3]** In his final argument, defendant alleges the trial court committed plain error by not requiring unanimous verdicts regarding the acts of first degree sexual offense and taking indecent liberties with a minor. This argument has no merit.

Defendant concedes that counsel made no objection to the jury instruction at trial. Rule 10(b)(2) of the Rules of Appellate Procedure states that "[a] party may not assign as error any portion of a jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict." Nevertheless, a party may assign error to a jury instruction if the party alleges the error in the instruction amounts to plain error. N.C.R. App. P. 10(c)(4). In order to prevail under a plain error analysis, the defendant must show that "(1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Jackson,* 139 N.C. App. 721, 729, 535 S.E.2d 48, 53 (2000) (citation omitted), *rev'd in part on other grounds,* 353 N.C. 495, 546 S.E.2d 570 (2001).

The North Carolina Constitution requires that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." Art. 1, § 24. Nevertheless, our Supreme Court has held that the threat of a non-unanimous verdict does not arise in the case of an indecent liberties charge because the statute for that offense does not list separate crimes in the disjunctive. *State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990) (distinguishing sexual offense and indecent liberties statutes from the drug trafficking statute). Rather, the indecent liberties statute, G.S. § 14-202.1, proscribes "any immoral, improper, or indecent liberties." Thus,

> [e]ven if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unani-

mously find that there occurred sexual conduct within the ambit of "any immoral, improper, or indecent liberties." Such a finding would be sufficient to establish the first element of the crime charged.

*Hartness*, 326 N.C. at 565, 391 S.E.2d at 179. Similarly, the Supreme Court has held that a defendant may be convicted of first degree sexual offense even if the trial court instructs the jury that more than one sexual act may comprise an element of the offense. *See State v. Foust*, 311 N.C. 351, 317 S.E.2d 385 (1984) (holding that the trial court did not deny the defendant a unanimous verdict when it instructed the jury that either "oral or anal sex" would qualify as a sexual act to support a finding that the defendant was guilty of first degree sexual offense), *overruled by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986), *overruling abrogated by State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990).

Defendant concedes in his brief to this Court that the trial court's instructions comport with North Carolina case law. Nevertheless, defendant cites *Richardson v. United States*, 526 U.S. 813, 143 L. Ed. 2d 985 (1999), for support of his argument that the verdicts against him do not comply with federal constitutional law. *Richardson*, however, involved the interpretation of a federal criminal statute, 21 U.S.C. § 848, which forbids any person from engaging in a "continuing criminal enterprise." The criminal enterprise is defined as the violation of federal drug laws. *Id.* The Supreme Court held that, based on the language of the federal statute, a jury must unanimously agree on each of the violations making up the "continuing series of violations." *Id.* at 815, 143 L. Ed. 2d at 991. However, the Court recognized that a jury in other cases "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* at 817, 143 L. Ed. 2d at 992 (citations omitted). The holding in *Richardson* is therefore limited to federal prosecutions under 21 U.S.C. § 848, and does not apply to the case *sub judice*.

The trial court in the present case set forth the elements for taking indecent liberties with a child, defining an indecent liberty as "an improper or indecent touching by the defendant upon the child." Thus, the trial court made explicit in its instructions that the jury must find that defendant touched the victim in an improper or indecent way in order to convict.

With regard to the charge of first degree sexual offense, the trial court defined a sexual act as:

> cunnilingus, which is any touching, however, slight, by the lips or the tongue of one person to any part of the female sex organ of another, or any penetration, however slight, by an object into the genital opening of a person's body. I instruct you that an object may include a finger or fingers.

In order to find defendant guilty of first degree sexual offense, therefore, the jury was required to find either that defendant performed cunnilingus on the victim or that defendant penetrated the victim's genitals with an object, such as a finger. This instruction comports with G.S. § 14-27.1(4), which defines a sexual act as "cunnilingus, fellatio, analingus, or anal intercourse," as well as "penetration, however slight, by any object into the genital or anal opening of another person's body." The trial court committed no error in its instruction to the jury concerning the charges of indecent liberties with a child and first degree sexual offense. Defendant's assignments of error to the contrary are overruled.

No error.

Judges WALKER and TYSON concur.