STATE OF NORTH CAROLINA v. ROBERT LAWRENCE HOLLAND

No. COA01-721

(Filed 4 June 2002)

**1. Evidence— expert testimony—Highway Patrol trooper— accident investigation**

The trial court did not abuse its discretion in an involuntary manslaughter prosecution by allowing a Highway Patrol trooper to testify as an expert in accident reconstruction where the witness had been a trooper for 16 years and had both formal training and experience in accident investigation and reconstruction. N.C.G.S. § 8C-1, Rule 702.

STATE v. HOLLAND

[150 N.C. App. 457 (2002)]

**2. Evidence— expert testimony—accident reconstruction— sufficiently reliable**

A Highway Patrol trooper's testimony in reconstructing an accident in an involuntary manslaughter prosecution established a sufficient level of reliability to support the trial court's discretionary admission of his expert testimony.

**3. Evidence— guilt of another—involuntary manslaughter— drunken driving**

There was no prejudicial error in a prosecution for involuntary manslaughter arising from a highway collision in the exclusion of evidence which purportedly tended to show that another driver (Greene) was the party who should have been charged where the excluded testimony would have been cumulative.

**4. Criminal Law— automobile accident—drinking—involuntary manslaughter—excluded blood test—questions and comments**

There was no prejudicial error in an involuntary manslaughter prosecution in comments in the prosecutor's crossexamination of defendant and in closing arguments about a hospital blood test after the hospital record was ruled inadmissible. Defendant's blood alcohol level was relevant, the prosecutor asked about defendant's awareness of the test rather than the hospital records, and the jury acknowledged an instruction not to consider the evidence which followed the statements in the argument. Moreover, there was overwhelming evidence that defendant was impaired.

Appeal by defendant from judgment entered 24 January 2001 by Judge Marvin K. Gray in Union County Superior Court. Heard in the Court of Appeals 16 April 2002.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Patricia A. Duffy, for the State.*

*Mann, VonKallist and Young, P.A., by Joseph VonKallist, for defendant-appellant.*

HUNTER, Judge.

Robert Lawrence Holland ("defendant") appeals his conviction of involuntary manslaughter resulting from a fatal automobile accident.

Defendant assigns error to the admission of certain evidence, to the trial court's failure to allow defendant to introduce certain evidence, and to statements made by the prosecutor during cross-examination and closing arguments. For the following reasons, we conclude defendant's trial was free of prejudicial error, and we therefore uphold his conviction and sentence.

The State's evidence tended to show that on 9 October 1999, Phillip Honeycutt and his son Russell were traveling in a Chevrolet pickup truck in the southbound lane of New Salem Road, a two-lane highway in Union County. Russell was driving, and it was shortly before noon when the Honeycutts' truck passed New Hope Baptist Church. At the same time, Corbett Greene was driving a tractor in the northbound lane of New Salem Road. Greene was driving as close to the side of the road as possible, with his right wheels on the white median line. The tractor was equipped with four red-flashing rear lights, two on the rear fender, and two on the rear canopy. Greene testified that these rear flashing lights were on at that time.

As Greene approached New Hope Baptist Church, he observed in his rear-view mirror a gray Jeep Cherokee "coming fast" behind him in his lane of travel. Defendant was driving the jeep. Greene testified that he immediately "jerked" his wheels to the right to get out of the way of the jeep, but he was only able to get one wheel off of the pavement by the time the front right of defendant's jeep hit his left rear tractor tire. Greene testified that the impact raised the tractor entirely off of the ground before it hit the pavement and tipped over onto its side. He further testified that he never heard any tires squeal prior to defendant's jeep hitting the tractor from behind. After defendant's jeep struck the tractor, it veered into the southbound lane of the highway and collided head-on with the Honeycutts' truck. Phillip Honeycutt was killed as a result of head and neck fractures sustained in the collision, and Russell was seriously injured.

Various witnesses converged on the scene of the accident. James Holmes testified that he approached the driver's side of defendant's jeep and observed defendant in the driver's seat behind a partially inflated airbag. Holmes testified that he observed a strong smell about defendant of what he believed to be liquor, and that in his opinion, defendant was "drunk." Holmes attempted to reassure defendant, telling him that help had been called. Defendant then extended his hand out of his window to shake hands with Holmes. When Holmes declined to shake defendant's hand because it was "real bloody," defendant stated, "[y]ou sure are ugly." Holmes noticed that defend-

ant had some dogs in the jeep, some of which appeared to be injured. Holmes wanted to open one of the jeep doors to get the dogs outside, and he asked defendant whether the dogs would bite. Defendant began to tell Holmes the dogs' names. Holmes testified that in the process of trying to keep the dogs calm, he called one of them by the wrong name, whereupon defendant became "upset" and corrected him as to the dog's name "like it really mattered."

Trooper Barry Hiatt of the North Carolina State Highway Patrol testified that he inspected defendant's jeep at the scene of the accident. He observed that there was green paint on the right front of defendant's vehicle which appeared to match the green paint on Greene's tractor, and that there was damage to the left rear of Greene's tractor. Trooper Hiatt also observed gray paint which appeared to match defendant's jeep in the front radiator of the Honeycutt's truck. He further testified that he inspected the interior of defendant's jeep and did not see any alcoholic beverage containers.

Trooper Hiatt then located defendant at the hospital where he observed defendant struggling with and "talking back to" the medical staff. Trooper Hiatt smelled alcohol in defendant's room, and upon speaking with defendant, he noticed that his speech was slurred, his face was flushed, and his eyes were red and glassy. Trooper Hiatt testified that it was his opinion that defendant was under the influence of alcohol, and that his "appreciable impairment" caused him to lose control over his mental and physical faculties. Trooper Hiatt read defendant his rights and then asked if he would consent to a blood test. Defendant did so, and a test administered shortly after 3:00 p.m., at least three hours after the accident, revealed defendant's blood alcohol level to be .222. Defendant was charged with driving while impaired, which charge was upgraded to involuntary manslaughter on 29 November 1999 upon the death of Phillip Honeycutt.

Defendant testified on his own behalf, stating that Greene's tractor had pulled out in front of him from a dirt logging road. Defendant maintained that this caused him to strike the tractor and veer to the left. He testified on direct examination that he had no memory of what had occurred after he struck the tractor, remembering only that his jeep came to a rest at the side of the road and that he was in pain. However, defendant maintained on cross-examination that he "didn't hit the damn pickup truck," but rather, Russell Honeycutt was driving on the wrong side of the road and ran into the front of Greene's trac-

tor. When asked why there was no noticeable damage to the front of Greene's tractor, defendant simply responded that the front of the tractor "weighs a thousand pounds" and that "[y]ou could drive that [tractor] into the church and there wouldn't be any damage on it." Defendant further testified that he had not been drinking prior to the accident, but once his jeep came to a rest following the collision, he picked up one of two liquor bottles from the floor of his jeep and began to drink vodka to "self medicate."

On 24 January 2001, a jury convicted defendant of involuntary manslaughter. The trial court entered judgment thereon, sentencing defendant to eighteen to twenty-two months' imprisonment. The trial court also ordered defendant to pay restitution to the Honeycutt family. He appeals.

[1] Defendant first argues on appeal that Trooper Hiatt's testimony was inadmissible because he should not have been qualified as an expert in the field of accident reconstruction, and because he failed to establish that his testimony was reliable. We disagree.

The trial court accepted Trooper Hiatt as an expert in accident investigation and reconstruction, and then permitted him to testify to details about the accident scene, including the extent and location of damage to the vehicles, the presence of scrape, gouge and scuff marks in the pavement, and the location of debris. Based on his analysis, Trooper Hiatt gave an opinion as to the sequence of events which occurred, opining that both Greene's tractor and defendant's jeep were traveling north on New Salem Road; that the jeep collided with the rear of the tractor; that thereafter, the jeep crossed the center line of the highway; that the jeep collided with the Honeycutt's pickup truck, which was traveling south; and that both vehicles then came to a rest on the left side of the road. Defense counsel vigorously cross-examined Trooper Hiatt before the jury both on his qualifications and his opinions.

Under N.C. Gen. Stat. § 8C-1, Rule 702 (2001), in order for expert testimony to be admitted, the expert must be qualified by "knowledge, skill, experience, training, or education." "North Carolina case law requires only that the expert be better qualified than the jury as to the subject at hand, with the testimony being 'helpful' to the jury." *State v. Jones*, 147 N.C. App. 527, 544, 556 S.E.2d 644, 654 (2001) (citation omitted), *appeal dismissed and disc. review denied*, 355 N.C. 351, 562 S.E.2d 427 (2002). The trial court's decision with respect to whether a witness possesses the necessary qualifications and is in

STATE v. HOLLAND

[150 N.C. App. 457 (2002)]

a better position than the jury to form an opinion on the matter to assist the jury in understanding the evidence "is within the sound discretion of the trial court and will not be reversed by the appellate court unless there is a complete lack of evidence to support it." *Pelzer v. United Parcel Service,* 126 N.C. App. 305, 309, 484 S.E.2d 849, 851-52, *disc. review denied,* 346 N.C. 549, 488 S.E.2d 808 (1997); *see also State v. Miller,* 142 N.C. App. 435, 444, 543 S.E.2d 201, 207 (2001) (abuse of discretion occurs where " 'ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision' " (citation omitted)).

In this case, we cannot hold that there is a "complete lack of evidence" to support the trial court's acceptance of Trooper Hiatt as an expert in accident investigation and reconstruction. Trooper Hiatt's testimony established that he possesses both formal training and a fair amount of experience in investigating accidents, specifically with regard to accident reconstructions. Trooper Hiatt testified that he had been a State Trooper for sixteen years; that in 1992 he completed a six-week course in accident investigation and reconstruction for which he received a certificate entitled "Traffic Accident Reconstruction"; and that he has attended various other training programs in the area of accident investigation, including both a basic and advanced program on the inspection and investigation of commercial vehicle accidents, and a training course in the use of a device used to take measurements at accident scenes. In addition, Trooper Hiatt testified that he has investigated somewhere between 2,000 and 2,500 automobile accidents, and he has conducted approximately thirty to forty accident reconstructions. We hold that the trial court did not abuse its discretion in ruling that Trooper Hiatt was more qualified than the jury on the subject at hand, and that his testimony would assist the jury in understanding the evidence.

**[2]** We also disagree with defendant that Trooper Hiatt's testimony should have been excluded because it failed to meet the reliability requirements of *Daubert v. Merrell Dow,* 509 U.S. 579, 125 L. Ed. 2d 469 (1993), as interpreted by our Supreme Court in *State v. Goode,* 341 N.C. 513, 461 S.E.2d 631 (1995). As with the decision on who qualifies as an expert, the decision on what expert testimony to admit is within the wide discretion of the trial court. *See State v. Washington,* 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied,* 353 N.C. 396, 547 S.E.2d 427 (2001).

In *Taylor v. Abernethy,* 149 N.C. App. 263, 560 S.E.2d 233 (2002), this Court very recently analyzed the requirements of the admission

of expert testimony set forth in *Daubert*, and particularly *Goode*. We noted that "nothing in *Daubert* or *Goode* requires that the trial court re-determine in every case the reliability of a particular field of specialized knowledge consistently accepted as reliable by our courts, absent some new evidence calling that reliability into question." *Id.* at 274, 560 S.E.2d at 240. Thus, in *Taylor*, where the principles underlying expert testimony on handwriting analysis had been repeatedly recognized as reliable and admissible, the trial court was not required to launch into a full analysis of the reliability of its underlying principles. *Id.*; *see also State v. Parks*, 147 N.C. App. 485, 490, 556 S.E.2d 20, 24 (2001) (no abuse of discretion in admitting officer's expert testimony in fingerprint analysis where Supreme Court has already "recognized that fingerprinting is an established and scientifically reliable method of identification").

We observe that expert testimony in the field of accident reconstruction has been widely accepted as reliable by the courts of this State. *See, e.g., Griffith v. McCall*, 114 N.C. App. 190, 194, 441 S.E.2d 570, 573 (1994) (upholding admission of accident reconstruction expert testimony to assist jury in understanding central issues and noting that it is the function of cross-examination to expose any weaknesses in the expert testimony); *State v. Purdie*, 93 N.C. App. 269, 276, 377 S.E.2d 789, 793 (1989) (expert testimony on accident reconstruction admissible where based on expert's review of accident report, an interview with the investigating officer, photographs of the accident scene, and review of witness' testimony, because such information is that which is reasonably relied upon by experts in the field; where dispute existed over sequence of events, expert's testimony would clearly assist jury in interpreting physical evidence). Under our decision in *Taylor*, this alone sufficiently supports the admission of Trooper Hiatt's testimony, as defendant failed to set forth any new evidence calling the reliability of the methods of accident reconstruction into question.

In any event, we observe that Trooper Hiatt's testimony regarding his reconstruction methods and his analysis established a sufficient level of reliability to support the trial court's discretionary admission of his expert testimony. "Our Rules of Civil Procedure make clear that expert testimony may be based not only on scientific knowledge, but also on technical or other specialized knowledge not necessarily based in science." *Taylor*, 149 N.C. App. at 272, 560 S.E.2d at 239 (citing N.C. Gen. Stat. § 8C-1, Rule 702(a) (1999)). As we further stated in *Taylor*:

According to *Goode*, when faced with the proffer of expert testimony, the trial court must first "determine whether the expert is proposing to testify to scientific, technical, or other specialized knowledge that will assist the trier of fact to determine a fact in issue." This requires a preliminary assessment of whether the basis of the expert's testimony is "sufficiently valid and whether that reasoning or methodology can be properly applied to the facts in issue." In making this determination of reliability, our Supreme Court noted that our courts have focused on the following indicia of reliability: ". . . 'the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked "to sacrifice its independence by accepting [the] scientific hypotheses on faith," and independent research conducted by the expert.' "

*Id.* at 273, 560 S.E.2d at 239 (citations omitted). Here, Trooper Hiatt's testimony revealed that the techniques he employs in performing reconstructions are established techniques; he possesses extensive background in accident investigation and reconstruction; and he employed the use of several photographic exhibits to assist in illustrating his testimony for the jury. Defense counsel vigorously cross-examined Trooper Hiatt on his findings and conclusions. Although Trooper Hiatt did not testify as to any independent research that he has conducted in the area, there was evidence to support the trial court's ruling, and as such, we hold that it was not manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *See Miller*, 142 N.C. App. at 444, 543 S.E.2d at 207. These arguments are therefore rejected.

[3] By his next argument, defendant maintains the trial court erred in prohibiting him from introducing evidence that Greene was the party who should have been charged with the crime. Specifically, defendant sought to introduce evidence from one of Greene's treating physicians, Dr. Alexander Snyder, to establish that Greene had been suffering from a myriad of health problems in the time leading up to the accident, and that Greene also had alcohol problems, both of which could have affected his judgment and capabilities at the time of the accident.

The trial court permitted Dr. Snyder to testify to Greene's health as he observed it during August 1999 and October 1999 office visits. However, when defendant sought to introduce Dr. Snyder's testimony as to Greene's office visits dating from April 1999, approxi-

mately six months prior to the accident, and prior, the State objected on grounds of relevance. On *voir dire*, defendant established that Dr. Snyder would have testified that during April 1999 office visits, Greene stated he was experiencing shortness of breath, frequent falls, and that Greene smelled of alcohol; that during a January 1999 office visit, Dr. Snyder was of the opinion that Greene had been drinking; that during a December 1998 visit, Greene complained of difficulty in raising his arms and also smelled of alcohol; that in July 1996, Greene experienced loss of appetite and difficulty sleeping; and that in August 1996 Greene sustained a skin tear as a result of a fall and also smelled of alcohol. When the trial court asked Dr. Snyder if Greene's office visits dating back to April 1999 and prior would be in any way connected to the accident, Dr. Snyder responded he was unaware of any connection.

Even if it were error for the trial court to have excluded Dr. Snyder's testimony on the grounds of relevance, any error could not have been prejudicial where other testimony from Dr. Snyder, and testimony from Greene's cardiologist, Dr. James Roberts, and Greene himself clearly established what defendant sought to prove: that Greene had a history of health and alcohol problems that could have affected his capabilities at the time of the accident. Extensive testimony pertaining to Greene's health problems in the months leading up to the accident was admitted, and Greene himself testified that he had been drinking on the morning of the accident and had been charged with driving while impaired following the accident.

Dr. Snyder testified to office visits wherein Greene complained of being tense and having problems sleeping. Dr. Snyder also testified that Greene was on blood-thinning medication, showed a loss of muscle, and had decreased range of motion in his shoulders which caused him difficulty with such basic tasks as buttoning a shirt and lifting a utensil to his mouth. Dr. Roberts, whom the defense tendered as an expert in cardiology, testified to a July 1999 office visit wherein Greene complained of chest pain and gastric problems. Dr. Roberts noted that Greene had trouble walking properly, that he was prone to frequent falling, that he did not have normal feeling in his right leg, that he had experienced a slow heart rate, and that he might suffer from angina and weakness of the heart muscle. Dr. Roberts testified his notes revealed Greene had a severely decreased appetite, had experienced weight loss, and that Greene admitted to regularly consuming twelve or more beers a day. On cross-examination, in addition to testifying that he consumed alcohol on the morning of

STATE v. HOLLAND

[150 N.C. App. 457 (2002)]

the accident, Greene admitted to suffering from various health problems.

Thus, defendant was permitted to elicit ample testimony regarding Greene's health and drinking habits. Dr. Snyder's *voir dire* testimony, if admitted, would simply have been cumulative, and therefore, defendant could not have been prejudiced by its exclusion. *See* N.C. Gen. Stat. § 15A-1443(a) (2001) (defendant carries burden of establishing that but for alleged error, the result of the trial would have been different). This assignment of error is overruled.

**[4]** In his final argument, defendant contends he was denied a fair trial because of comments the prosecutor made during cross-examination and closing arguments regarding the results of a hospital-administered blood test. The results of the test appeared on a hospital record entitled "Laboratory Cumulative Summary," which indicated that a blood sample drawn from defendant by hospital personnel at 1:12 p.m. on the afternoon of the accident showed a blood alcohol concentration of .307. The State attempted to introduce the hospital record under N.C. Gen. Stat. § 8C-1, Rule 803(6) (2001), the business records exception to the rule against hearsay, and expressed to the trial court that it was prepared to have the hospital's records custodian testify to authenticate the record. The trial court ruled the record inadmissible.

On cross-examination of defendant, the State was permitted to ask, over defendant's objection, whether defendant was aware that the test had been performed, and that it had registered a .307 blood alcohol content. Defendant stated he was not aware of the test. The record also reveals that at some point during closing arguments, the prosecutor made mention of the test and its results, whereupon the jury was excused from the courtroom and a discussion ensued. When the jury was brought back for the remainder of arguments, the trial court instructed that the test and its results were not in evidence and that the jury was not to consider it. The jury responded that they understood they were not to consider evidence of the test and its results.

We first note that it was not entirely impermissible for the prosecutor to ask defendant on cross-examination whether he was aware of the results of the other blood test, as defendant's blood alcohol content approximately one hour following the accident was highly relevant to the case. As our Supreme Court has held:

"[I]t remains true that the North Carolina practice is quite liberal and, under it, cross-examination may ordinarily be made to serve three purposes: (1) to elicit further details of the story related on direct, in the hope of presenting a complete picture less unfavorable to the cross-examiner's case; (2) to bring out new and different facts relevant to the whole case; and (3) to impeach the witness, or cast doubt upon her credibility."

*State v. Scott*, 343 N.C. 313, 338, 471 S.E.2d 605, 620 (1996) (citation omitted) (emphasis omitted). Here, the prosecutor did not attempt to admit the hospital records on cross-examination of defendant, but simply asked defendant about his own awareness of the records, which subject matter was relevant to the case. " 'A witness may be cross-examined on any matter relevant to any issue in the case.' " *State v. Yearwood*, 147 N.C. App. 662, 665, 556 S.E.2d 672, 675 (2001) (quoting N.C. Gen. Stat. § 8C-1, Rule 611(b) (1999)). We discern no abuse of discretion in the trial court's allowing the prosecutor's questions. *See id.* (trial court " 'has broad discretion over the scope of cross-examination' " (citation omitted)).

Moreover, to the extent the prosecutor should not have stated the test results during closing arguments because the trial court had ruled them inadmissible, the trial court thereafter instructed the jury that this information was not in evidence and that they were not permitted to consider it. The jury acknowledged their understanding of the trial court's instruction. It is very well-established that " '[w]hen defense counsel objects, and the objection is sustained, and curative instructions are given to the jury, defendant has no grounds for exception on appeal. "Jurors are presumed to follow a trial judge's instructions." ' " *State v. Lewis*, 147 N.C. App. 274, 280, 555 S.E.2d 348, 352 (2001) (citations omitted) (no basis for objection on appeal where record shows that defense objected to statement made by prosecutor during closing arguments and trial court thereafter sustained objection and provided curative instruction); *see also, e.g.,* *State v. Taylor*, 340 N.C. 52, 64, 455 S.E.2d 859, 866 (1995) (no prejudice to defendant where trial court gave curative instruction requiring that jurors disregard testimony from their consideration where jurors indicated they understood the court's instructions; jurors are presumed to follow court's instructions, and "trial judge properly cured any potential error").

In any event, we hold that any error was harmless beyond a reasonable doubt. The overwhelming evidence presented at trial established that defendant was impaired to an "appreciable" extent

following the accident. Witnesses at the scene testified to defendant's demeanor and stated that defendant appeared to be "drunk" immediately following the accident. Defendant's emergency room doctor testified there was a "strong presence" of a smell about defendant which he recognized to be the smell of liquor; that defendant's speech was slurred to a "very noticeable" extent; that defendant engaged in "multiple incidences of inappropriate or obnoxious comments towards staff in the hospital," including the use of profanity; and that in his opinion, not only were defendant's mental and physical capacities impaired by alcohol, but they were "appreciably impaired."

In addition, Trooper Hiatt, who observed defendant in the hospital, testified that defendant's hospital room smelled of alcohol, defendant was acting belligerently to the medical staff, and that defendant's speech was slurred, his face was flushed, and his eyes were red and glassy. Trooper Hiatt testified that defendant's impairment was so "appreciable" that he had lost the capacity to control his mental and physical faculties. Defendant himself testified that following the accident, he attempted to "self medicate" by taking several "strong swigs" of vodka. Moreover, another blood test, the results of which were properly presented to the jury, revealed that defendant's blood alcohol concentration several hours after the accident was .222. Thus, the evidence of defendant's impairment following the accident was overwhelming, and evidence of an additional blood test confirming that defendant was intoxicated would have had little, if any, impact.

For these reasons, we hold that the prosecutor's comments, if erroneous, were harmless beyond a reasonable doubt. Accordingly, we need not address the State's cross-assignment of error that the trial court erred in excluding the hospital records from evidence. Defendant received a fair trial.

No error.

Judges GREENE and TIMMONS-GOODSON concur.