STATE OF NORTH CAROLINA v. JEREMY SCOTT STEELMON

No. COA05-847

(Filed 4 April 2006)

**Witnesses— expert—officer—lividity of body and approximate time of death**

The trial court did not abuse its discretion in a first-degree murder case by admitting expert testimony from an officer as to the lividity of the body and approximate time of death even though he was not a medical expert, because: (1) the evidence shows that the officer has a degree in criminal justice and training in the areas of crime scene investigation and homicide, along with his many years of experience as an officer; (2) the trial court determined that the officer's expertise in death scene investiga-

**STATE v. STEELMON**

[177 N.C. App. 127 (2006)]

tions puts him in a better position to give an opinion on the subjects of lividity and approximate time of death than the trier of fact; and (3) the standard for admission of expert testimony does not require an expert to be licensed or a specialist in the field in which he testifies.

Appeal by defendant from judgments entered 1 March 2004 by Judge David S. Cayer in Catawba County Superior Court. Heard in the Court of Appeals 22 February 2006.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General David Roy Blackwell, for the State.*

*Leslie C. Rawls for defendant-appellant.*

HUNTER, Judge.

Jeremy Scott Steelmon ("defendant") appeals from judgments entered 1 March 2004 consistent with a jury verdict of first degree murder, second degree burglary, and entering a vehicle with intent to steal.

The sole issue in this case is whether the trial court erred in permitting expert testimony from Police Officer Norris Yoder ("Officer Yoder") concerning the lividity and approximate time of death of the victim. For the reasons stated herein, we find no error.

Christopher Ledford ("Ledford"), an acquaintance of defendant, testified that in the early morning hours of 20 July 2001 defendant called him twice. In the first conversation, Ledford testified that defendant said he had broken into an elderly woman's house. In the second conversation, defendant told Ledford that he had killed the elderly woman by slitting her wrists.

Defendant testified that he first entered Jean Wolff's ("Wolff") home sometime between 8:30 p.m. and 9:00 p.m. on 19 July 2001. He then fell asleep and was awakened when Wolff returned home. Defendant testified that when he woke up, Wolff was coming at him with a knife. Defendant stated that he was trying to get the knife away from Wolff when it flew out of her hand and cut her wrist. Defendant then pushed Wolff away and ran past her to leave through the back door. Defendant stated that he heard a thud as though Wolff had hit her head. Defendant stopped, came back, and checked for a pulse but did not find one.

On 20 July 2001, Officer Brett Porter ("Officer Porter") was dispatched to the home of Wolff. Upon arrival, he found Wolff's body on the kitchen floor. Later, Officer Yoder was called to Wolff's home to investigate her death. When Officer Yoder entered the home, he observed Wolff's body lying on her left side in the center area of the kitchen floor. Officer Yoder testified that Wolff's left wrist appeared to have been cut, resulting in a small amount of blood pooled under the wrist. In Officer Yoder's opinion, the laceration was made while Wolff was lying on the kitchen floor. Officer Yoder testified that Wolff appeared to have suffered some trauma to the left side of her head. The only blood Officer Yoder observed in the entire house lay directly below Wolff's left wrist, below her head on her clothing, and one small dried spot directly in front of the body.

The trial court allowed Officer Yoder to testify as an expert in death scene investigation. The State offered Officer Yoder's education, experience, and training as foundations to qualify him as an expert. Officer Yoder testified that he held a bachelor's degree from the University of North Carolina-Charlotte in criminal justice, and he had received training from Western Piedmont Community College and the North Carolina Justice Academy in crime scene search and investigation. He also received training in the area of homicide and death investigation. Officer Yoder stated that he was a member of the North Carolina Homicide Investigators Association and had attended at least five conferences where he received in-depth training on various aspects of homicide investigation. Officer Yoder also testified to his experience with twenty-eight years in law enforcement, responding to over two hundred death scenes, including fifteen to twenty homicides.

Over defendant's objections, Officer Yoder was allowed by the trial court to testify as an expert. Officer Yoder explained that lividity occurs when there is pooling of the blood after someone dies, i.e. the blood will sink to the lowest level. Significant lividity indicates that the body was in that position for some time. Officer Yoder opined that Wolff's body had significant lividity, and he concluded that her body had been in that position for several hours. Officer Yoder stated that the amount of lividity could give an approximate, but not exact time of death, and thus, he was unable to pinpoint the exact time of Wolff's demise. Dr. Mark Russell Atkins ("Dr. Atkins"), the Catawba County Medical Examiner, conducted Wolff's autopsy and concluded that Wolff died of a concussive injury.

Defendant was found guilty and convicted of first degree murder, second degree burglary, and entering a vehicle with intent to steal. Defendant's second degree burglary conviction was arrested as the felony underlying the first degree murder conviction. Defendant was sentenced to life in prison. Defendant appeals.

Defendant contends the trial court erred in allowing Officer Yoder to testify as an expert in lividity and approximate time of death. We disagree.

When reviewing whether the trial court erred in permitting a witness to qualify as an expert, the appellate court looks for an abuse of discretion. This Court has consistently given much deference to the trial court when determining the admissibility of expert testimony. *State v. Alderson*, 173 N.C. App. 344, 350, 618 S.E.2d 844, 848 (2005); *see also State v. White*, 154 N.C. App. 598, 604, 572 S.E.2d 825, 830 (2002). Thus, the trial court's decision will only be reversed if the appellate court finds an abuse of discretion. *State v. Holland*, 150 N.C. App. 457, 461-62, 566 S.E.2d 90, 93 (2002).

Rule 702(a) of the North Carolina Rules of Evidence states, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1 Rule 702(a) (2005). However, when trial courts make determinations concerning a witness's ability to testify as an expert, they are not bound by the Rules of Evidence. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). The Supreme Court of North Carolina in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995), set out a three-part analysis for determining whether to permit expert testimony. The first step evaluates whether the expert's method of proof is sufficiently reliable as an area for expert testimony. *Id.* at 527, 461 S.E.2d at 639. The second step determines whether the witness testifying at trial is qualified as an expert in that area of testimony. *Id.* at 529, 461 S.E.2d at 640. Finally, the court must ask whether the expert's testimony is relevant. *Id.* at 529, 461 S.E.2d at 641. The second step of the analysis is at issue in the present appeal.

The standard for evaluating a witness's qualification as an expert is whether his expertise places him in a better position to have an opinion on the subject than the trier of fact. *Goode*, 341 N.C. at 529, 461 S.E.2d at 640. Under *Howerton*, it is not necessary that an expert

be experienced with the identical subject matter at issue, or be a specialist, licensed, or even engaged in a specific profession. *Howerton*, 358 N.C. at 461, 597 S.E.2d at 688. Whether a witness is qualified as an expert is largely a question of fact answered by the trial court. *Id.* at 461-62, 597 S.E.2d at 688. Thus, trial courts are given wide discretion when determining whether expert testimony is allowed at trial. *Id.* at 458, 597 S.E.2d at 686.

Defendant argues the trial court erred in allowing the jury to hear the expert testimony of Officer Yoder, contending Officer Yoder testified outside of his area of expertise concerning lividity of the body and approximate time of death. Defendant argues that only a medical expert may make determinations concerning lividity and time of death.

Here, the evidence shows that Officer Yoder has a degree in criminal justice and training in the areas of crime scene investigation and homicide, along with his many years of experience as an officer. The trial court determined that Officer Yoder's expertise in death scene investigations puts him in a better position to give an opinion on the subjects of lividity and approximate time of death than the trier of fact.

Under the abuse of discretion standard, the trial court is given much deference to determine whether a witness is qualified as an expert. The trial court in this case did not abuse its discretion when allowing Officer Yoder to testify as a witness. The State offered ample evidence to support the trial court's finding that Officer Yoder, because of his expertise, was better qualified to give his opinion on the subject than the trier of fact. Therefore, Officer Yoder was qualified to give an expert opinion on lividity of the body and approximate time of death, even though he was not a medical expert, as our standard does not require an expert to be licensed or a specialist in the field in which he testifies.

Thus, the trial court properly permitted expert testimony from Officer Yoder as to lividity of the body and approximate time of death.

No error.

Judges HUDSON and BRYANT concur.