THE STATE OF OHIO, APPELLANT, *v.* GARDNER, APPELLEE.

[Cite as *State v. Gardner,* 118 Ohio St.3d 420, 2008-Ohio-2787.]

(No. 2007–0375—Submitted January 23, 2008—Decided June 18, 2008.)

O'CONNOR, J.

{¶ 1} Appellee, Reginald Gardner Jr., was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), with a firearm specification; one count of felonious assault in violation of R.C. 2903.11(A)(2), with a firearm specification; and one count of burglary in violation of R.C. 2911.12(A)(2). At trial, the jury found him guilty of aggravated burglary with the firearm specification but acquitted him on the other offenses.

{¶ 2} Gardner appealed, asserting that his due process rights were violated because the jury instructions did not specify that the jury needed to agree unanimously as to which criminal offense Gardner intended to commit during the course of the aggravated burglary. The court of appeals agreed and vacated his conviction. We now reverse.

### RELEVANT BACKGROUND

{¶ 3} On the evening of April 25, 2005, Ebony Lee prepared dinner in her home for her three children. Her boyfriend, James Pippins, was present at the time.

{¶ 4} While the children were eating, Lee telephoned Gardner to purchase marijuana from him. A short time later, Gardner arrived at Lee's home accompanied by a friend, codefendant Turrell Justice.

{¶ 5} Lee spoke with Gardner and Justice from her back porch. Gardner and Justice argued over whether Justice could have some of the marijuana that Gardner had brought for Lee.

### The State's Case: Aggravated Burglary

{¶ 6} From inside the house, Pippins heard the raised voices and, apparently believing that Gardner and Justice were arguing with Lee, confronted Gardner. But upon learning that he had misunderstood the situation, he calmed down, admitted his mistake, and went back inside. Gardner, however, was not pleased.

{¶ 7} Despite Pippins's retreat, Gardner continued to yell at Pippins and repeatedly threatened to kill him. Lee no longer wanted to purchase the marijuana and opened the screen door to go back into her apartment. Gardner grabbed the door from Lee's hand, pushed her out of the way, and entered her home.

{¶ 8} After entering Lee's home, Gardner assaulted Pippins. The men fought, and Pippins eventually "slammed" Gardner on the floor.

{¶ 9} At that time, Justice, who had also entered Lee's apartment without her permission, attempted to assist Gardner. Lee grabbed Justice by the back of his shirt to prevent him from doing so, and Lee and Justice then "tussl[ed]." Justice stepped back, lifted his shirt, pulled a gun from his pants, and pointed it at Pippins's back.

{¶ 10} Gardner repeatedly demanded that Justice give him the gun to kill Pippins. Justice refused, stating, "No, we got three kids in here. I got three kids, I know how it is. We going to catch [Pippins] in the 'hood. We going to kill him." Gardner and Justice then left Lee's apartment.

{¶ 11} During the state's closing statements to the jury, it argued that this initial entry without permission constituted the aggravated-burglary offense. In its brief before this court, the state avers that the felonious-assault count of the indictment also arose from this initial portion of the incident. Our review of the record, however, establishes that the state's real theory at trial was that a subsequent portion of the incident, described below, served as the basis for the felonious-assault and burglary charges.

### The State's Case: Felonious Assault and Burglary

{¶ 12} Lee testified that after Gardner and Justice left her home, she called the police. She then arranged for her cousin to pick her up. The police responded

and began to search the neighborhood for Gardner and Justice. As they did so, Lee gathered her children, and she and Pippins prepared to leave the premises and stay with relatives.

{¶ 13} Before they could leave, however, Gardner and Justice allegedly returned to Lee's home with approximately eight people, whom Gardner referred to as his "killers." As Gardner approached Lee's back door, he reiterated his threats to kill Pippins. Pippins attempted to placate him, but to no avail. While the men argued, Lee gathered her children into her cousin's car.

{¶ 14} Lee testified that as she and her family were driven to a nearby parking lot to safely await the police's arrival, she observed Gardner kick in her back door. Although she "assumed" that Gardner entered her apartment because she no longer saw him, her testimony was equivocal on that point.

{¶ 15} Lee also testified that as Gardner kicked in the back door, the group of men that had accompanied him ran to the front of her apartment, apparently to trap Pippins. Before they got there, Pippins escaped through the front door, jumped a fence, and fled down the street.

{¶ 16} Lee and other witnesses at trial testified that either Justice or Gardner, or both, were shooting at Pippins as he ran from the scene. That testimony was somewhat confused and, at times, contradictory.

### The Defense

{¶ 17} Justice and Gardner were tried together. Neither testified at trial. Defense counsel conceded that Justice and Gardner had gone to Lee's apartment to sell her marijuana and that there had been a disagreement there between Gardner and Pippins. They asserted their clients' innocence of the crimes charged, however, claiming that their clients had been falsely accused and that the state's case lacked factual and legal bases.

{¶ 18} Justice's attorney argued that Justice had merely attempted to break up the fight between Gardner and Pippins and that Justice had no intent to commit a crime in Lee's home. He also stated that after the fight ended, Justice and Gardner left the scene. Defense counsel denied that Justice had had a gun and stressed repeatedly that there was no physical evidence of a firearm or of a shooting at the scene.

{¶ 19} Gardner's counsel's theme was similar to Justice's. He suggested that as Lee spoke to Gardner about the marijuana, Pippins went into "a jealous fit of rage" and began yelling at Gardner, a reaction that angered Gardner and led to the men's fighting on Lee's back porch. Counsel asserted that as Gardner and Pippins fought, they "[got] up against the [back] door," the door opened, and the men "fell" into Lee's apartment.

{¶ 20} Gardner's counsel conceded that Pippins was victorious in the fight. He argued that Gardner had chased Pippins out of the house, but that Gardner had done so only because he wanted to even the score. Counsel claimed that Gardner abandoned the chase and went home, never returning to Lee's apartment.

{¶ 21} Gardner's counsel expressly denied that Gardner had had a gun and, like Justice's attorney, repeatedly stressed to the jury that there was no physical evidence of gunfire at or outside Lee's home.

{¶ 22} In their closing arguments to the jury, defense counsel reiterated these themes. They suggested that the state had not produced enough credible evidence to sustain a conviction on any of the charges. From these arguments, it is clear that defense counsel understood that the state's theory was that the felonious-assault charge arose from the shooting outside, not the fight that had occurred inside Lee's apartment.

### The Jury's Instructions, the Verdicts, and the Appeal

{¶ 23} The jury instruction on aggravated burglary, which tracked the indictment and the language of R.C. 2911.11(A)(2), stated:

{¶ 24} "In Count Three of the indictment, Mr. Reginald Gardner is charged with aggravated burglary. Before you can find Mr. Gardner guilty of this offense, you must find beyond a reasonable doubt that on or about April 25, 2005, in Montgomery County, Ohio, he did, by force, stealth or deception, trespass in an occupied structure, to-wit [Lee's apartment], or in a separately secured or separately occupied portion of the occupied structure, when another person, other than an accomplice of the offender, was present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, and did have a deadly weapon or dangerous ordnance, to-wit, a handgun, on or about his person or under his control.

{¶ 25} " * * *

{¶ 26} "If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of aggravated burglary charged against Mr. Gardner in Count Three, then your verdict must be not guilty."

{¶ 27} Although the instructions to the jury included a statement that "when all twelve—I repeat, all twelve—agree on your verdicts, complete the verdict forms, sign them in ink, and notify the bailiff," the judge did not give a more specific unanimity instruction, and he did not instruct the jury that it needed to agree as to which offense Gardner had intended to commit in the home. Nor did the judge instruct the jury on any specific crime that Gardner allegedly commit-

ted that would satisfy the "any criminal offense" prong of the statute.[1]

{¶ 28} After deliberating for a day, the jury returned its verdicts. It acquitted both Justice and Gardner of felonious assault and Gardner of burglary. However, it found both men guilty of aggravated burglary and the related firearm specification.

{¶ 29} Gardner appealed, raising several propositions. The court of appeals rejected most of his claims, including his argument that the convictions were supported by insufficient evidence and were against the manifest weight of the evidence. *State v. Gardner*, Montgomery App. No. 21357, 2007-Ohio-182, 2007 WL 127663, ¶ 9–20. It agreed, however, with Gardner's assertion that "by failing to specify the underlying criminal offense he had a purpose to commit, the court's instruction permitted the jurors to return a verdict of guilty on a finding that he had a purpose to commit some criminal offense, but without necessarily arriving at a unanimous agreement about what that offense was, depriving [Gardner] of his due process right to a unanimous verdict required by Crim.R. 31(A)." Id. at ¶ 54. The court of appeals acknowledged that Gardner did not object to the instruction, but found plain error and reversed the conviction. Id. at ¶ 54–55, 67.

{¶ 30} We accepted the state's discretionary appeal from that decision. *State v. Gardner*, 114 Ohio St.3d 1409, 2007-Ohio-2632, 867 N.E.2d 844, and now address the important due process issues raised by this appeal.

## ANALYSIS

### Ohio's Aggravated–Burglary Statute

{¶ 31} In Ohio, there are no common-law crimes. R.C. 2901.03(A); *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 383, 618 N.E.2d 138, fn. 4; *State v. Cimpritz* (1953), 158 Ohio St. 490, 49 O.O. 418, 110 N.E.2d 416, paragraph two of the syllabus ("The elements necessary to constitute a crime must be gathered wholly from the statute"). The General Assembly, like most state legislatures, has broadened the scope of many crimes, including aggravated burglary, well beyond their elements at common law. See Legislative Service Commission Notes to R.C. 2911.11; *State v. Barker* (Sept. 27, 2001), Licking App. No. 01–CA–0027, 2001 WL 1169561 (describing the expansion of Ohio's aggravated-burglary statute and the legislative intent "to broaden the common law concept of the offense of burglary from one of an offense against security of habitation, to one concerned with the risk of harm created by the actual or likely presence of a person in a structure of any nature"); *Taylor v. United States* (1990), 495 U.S. 575, 593, 110

---

1. The jury was given a felonious-assault instruction because Gardner was also charged with that offense, but the court did not inform the jury that the "any criminal offense" prong could be satisfied by finding that a felonious assault occurred.

S.Ct. 2143, 109 L.Ed.2d 607 (noting that "the contemporary understanding of 'burglary' has diverged a long way from its common-law roots" and that most states have expanded the offense). As our courts of appeals have found, it is obvious that the General Assembly's intent in doing so was to broaden the concept of burglary from an offense against the security of the home to one against the security of persons who may be inside. *State v. Bennie* (Mar. 17, 1993), Hamilton App. No. C–920396, 1993 WL 74780, *1, citing *State v. Green* (1984), 18 Ohio App.3d 69, 71, 18 OBR 234, 480 N.E.2d 1128.

{¶ 32} In order to convict Gardner under R.C. 2911.11(A)(2),[2] the state was required to establish that (1) he trespassed in Lee's home by use of force, stealth, or deception, (2) while someone other than Justice was present, (3) with the purpose to commit "any criminal offense" inside, (4) while carrying a deadly weapon or dangerous ordnance. Our analysis in this case focuses on the third prong, the "any criminal offense" element.

{¶ 33} Our cases make clear that the state was required to show that Gardner invaded the dwelling for the purpose of committing a crime or that he formed that intent during the trespass. *State v. Fontes* (2000), 87 Ohio St.3d 527, 721 N.E.2d 1037, syllabus (to be guilty of aggravated burglary, "a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass"). In broadening the scope of the crime, the legislature has expanded the mens rea element from an intent to commit a felony to an intent to commit "any criminal offense," which is the mental state required in the current version of R.C. 2911.11. Given the General Assembly's use of the term "any" in the phrase "any criminal offense," we presume that it intended to encompass "every" and "all" criminal offenses recognized by Ohio. See, e.g., *Cales v. Armstrong World Industries, Inc.*, Scioto App. No. 02CA2851, 2003-Ohio-1776, 2003 WL 1798671, ¶ 17, fn. 8 (citing cases defining "any" as meaning "every" and "all"); *Motor Cargo, Inc. v. Richfield Twp. Bd. of Twp. Trustees* (C.P.1953), 67 Ohio Law Abs. 315, 320, 52 O.O. 257, 117 N.E.2d 224.

### *Crim.R. 31(A), Due Process, and Juror Unanimity*

{¶ 34} With the elements of the crime in mind, we now consider the issue of juror unanimity in criminal cases.

---

2. {¶ a} R.C. 2911.11, aggravated burglary, provides:

   {¶ b} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

   {¶ c} " * * *

   {¶ d} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 35} First, however, we wish to clarify a point of some confusion. In the court of appeals and in the parties' briefs before this court, there seems to be at least an assumption that due process guarantees a criminal defendant the right to a unanimous verdict in a state court. No such guarantee exists. The Sixth Amendment guarantee of a jury trial requires unanimity in a federal criminal trial, but the high court has never held that this requirement applies to the states through the Fourteenth Amendment. *Apodaca v. Oregon* (1972), 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184; *Johnson v. Louisiana* (1972), 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152. In Ohio, unanimity is required by court rule, not by the Constitution.[3] Crim.R. 31(A). Therefore, this opinion will proceed on the understanding that unanimity in a juror verdict in state courts is not protected by the federal Constitution.

{¶ 36} That is not to say that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution has no implications in this case. Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368. "Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights," *State v. Adams,* 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97, citing *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and subvert the presumption of innocence and the right to have a jury determine the facts of a case. *Carella v. California* (1989), 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218.

{¶ 37} Thus, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 404 N.E.2d 144. Jurors must also unanimously agree that the defendant is guilty of the offense charged before the jury can return a guilty verdict. Crim.R. 31(A); *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph three of the syllabus. Contrary to the dissent's suggestion that we "state[ ] baldly that there is no due process right guaranteeing that criminal defendants receive a unanimous verdict in Ohio state courts," we merely recognize that the law on juror unanimity distinguishes between the elements of a crime and the means by which a defendant commits an element. The question before us is not whether there must be jury unanimity; the question is whether the jurors must agree unani-

---

3. In *Schad v. Arizona* (1991), 501 U.S. 624, 635, 111 S.Ct. 2491, 115 L.Ed.2d 555, fn. 5, the court does state that the right to juror consensus "is more accurately characterized as a due process right than as one under the Sixth Amendment," but the statement had only four votes for state trials as opposed to federal trials.

mously as to which criminal offense a defendant intended to commit during a burglary.

{¶ 38} Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. *Richardson v. United States* (1999), 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985. Applying the federal counterpart of Crim.R. 31(A), *Richardson* stated that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."

{¶ 39} In *Schad v. Arizona* (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, the Supreme Court stated, " '[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' " Id. at 631–632, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting *McKoy v. North Carolina* (1990), 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J., concurring).

{¶ 40} *Schad*'s rule arises from the fundamental understanding that a state may define a single crime as having alternative mental states. In *Schad*, an Arizona statute defined first-degree murder as a single crime that may be committed either with premeditation or during the perpetration of certain other offenses. A jury could convict a defendant of first-degree murder without agreeing on which of the two alternate theories applies. Because the mental states associated with premeditation and felony murder could reasonably be considered morally equivalent, a plurality of the court in *Schad* held that they could serve as alternative means of satisfying the mens rea element of the offense of murder without offending the due process requirement that the state must prove, and the jury must agree on, each element of the charged offense. Id., 501 U.S. at 643–644, 111 S.Ct. 2491, 115 L.Ed.2d 555.

{¶ 41} Based on that understanding, we have permitted juries to consider alternative theories in determining whether there is sufficient evidence of the mens rea element for murder without requiring unanimous agreement on one particular theory. See, e.g., *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 228, quoting *Schad*, 501 U.S. at 631–632, 111 S.Ct. 2491, 115 L.Ed.2d 555. We have extended that rule from the theory of mens rea to the predicate crimes that underlie aggravated murder.

{¶ 42} For example, in *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 183–189, we recently rejected the appellant's claim that his right to a unanimous jury verdict on an aggravated-murder charge was violated because the trial court instructed the jury that it could convict only if it found that the appellant committed or attempted to commit kidnapping, aggravated robbery, *or*

aggravated burglary. We acknowledged that some jurors may have convicted the appellant based on kidnapping while others may have found aggravated robbery or aggravated burglary. We found no error, however, because jurors need not agree on a single means for committing an offense. Id. at ¶ 188, citing *Schad*.

{¶ 43} Earlier, we had reached a similar conclusion in *State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407, an aggravated-murder case in which the state alleged that the murder had been committed in the course of rape. There, we rejected the appellant's contention that in order to ensure a unanimous verdict, the trial court was required to instruct the jury that it needed to agree as to whether he had committed a vaginal rape, an anal rape, or both. Id. at 11, 514 N.E.2d 407.

{¶ 44} We held that Ohio's rape statute required a showing of "sexual conduct" and that both vaginal intercourse and anal intercourse satisfied the statutory definition of "sexual conduct." We concluded that jurors needed to find only that sexual conduct had occurred in order to find the aggravating circumstance of rape and that because the statute did not require a specific finding as to the *type* of rape, the trial court did not err by refusing to instruct the jury that it must make that finding. Id., 33 Ohio St.3d at 11, 514 N.E.2d 407. We concluded, "The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio." Id.

{¶ 45} Despite these holdings, the court of appeals in this case declined the state's invitation to apply *Schad*. It held that this court had not made "an authoritative determination" that "any criminal offense" is a "mere means of satisfying the mens rea of aggravated burglary." 2007-Ohio-182, 2007 WL 127663, at ¶ 65. It then opined that " '[a]ny criminal offense' is an underlying criminal act with independent elements that must be proven beyond a reasonable doubt to satisfy a defendant's right to due process," and accordingly, that *Schad* had no application in this case. Id.

{¶ 46} We disagree with the appellate court's conclusion. We recognize, however, that there are important due process implications in considering the unanimity, or lack thereof, in a jury's verdict.

{¶ 47} For instance, due process forbids the state to criminalize conduct "in terms so vague that people of common intelligence would be relegated to different guesses about its meaning." *Schad*, 501 U.S. at 632, 111 S.Ct. 2491, 115 L.Ed.2d 555. Thus, due process would not permit a conviction "under a charge of '[c]rime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would

suffice for conviction." Id. at 633, 111 S.Ct. 2491, 115 L.Ed.2d 555. Similarly, the Due Process Clause limits a state's "capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense, thereby permitting a defendant's conviction without jury agreement as to which course or state occurred." Id.

{¶ 48} In determining whether the state has impermissibly interfered with a defendant's Crim.R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a reasonable doubt, the critical inquiry is whether the case involves "alternative means" or "multiple acts."

{¶ 49} " ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

{¶ 50} " ' "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." ' " (Footnote omitted.) *State v. Jones* (2001), 96 Hawai'i 161, 170, 29 P.3d 351, quoting *State v. Timley* (1994), 255 Kan. 286, 289–290, 875 P.2d 242, quoting *State v. Kitchen* (1988), 110 Wash.2d 403, 410, 756 P.2d 105.

{¶ 51} We find the distinction between "alternative means" cases and "multiple acts" cases to be a meaningful one and one that is consistent with our precedent. *Davis, McKnight,* and *Thompson* illustrate our analysis in alternative-means cases, while our decision in *State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636, recognizes that different standards apply in a multiple-acts case.

{¶ 52} In *Johnson,* we held that if a single count of an indictment can be divided into two or more " 'distinct conceptual groupings,' " the jury must be instructed specifically that it must unanimously find that the defendant committed acts within one conceptual grouping in order to reach a guilty verdict. Id. at 104–105, 545 N.E.2d 636, quoting *United States v. Gipson* (C.A.5, 1977), 553 F.2d 453, 458. But if the single count can be divided into a "single conceptual grouping of related facts," no specific instruction is necessary, because in such a case, the alternatives presented to the jury are not conceptually distinct, and a

"patchwork" verdict is not possible. *Johnson,* 46 Ohio St.3d at 105, 545 N.E.2d 636.

{¶ 53} *Johnson* was premised largely on *Gipson,* in which the defendant was convicted under a federal statute that prohibited a person from receiving, concealing, storing, bartering, selling, or disposing of a stolen vehicle or aircraft, known to be stolen, that had moved in interstate commerce. See Section 2313, Title 18, U.S.Code. In response to a question from the jury, the trial judge instructed the jurors that they need not agree on which of the acts enumerated in the statute the defendant had violated as long as each juror found that he had committed one of the acts. The jury convicted, and Gipson appealed, arguing that his right to a unanimous verdict had been violated.

{¶ 54} Reversing the trial court, the court of appeals concluded that the judge's instruction violated the defendant's right to have the jury decide unanimously which course of action the defendant had pursued. The court held that the trial judge's instruction improperly permitted the jury to convict on a single count without choosing between "two distinct conceptual groupings"—one that involved the "housing" of stolen goods (by receiving, concealing, and storing the goods) and one that involved the "marketing" of the stolen goods (by bartering, selling, and disposing of them). Id., 553 F.2d at 458–459.

{¶ 55} Both the Second District in this case and the Fifth Circuit in *Gipson* held that the right at stake was the right to a unanimous jury verdict and that the right was violated because the alternative elements in the statute were so dissimilar that the jury could have convicted without agreeing as to which of the two the defendant had committed. But the Supreme Court has questioned the validity of *Gipson,* characterizing the "distinct conceptual groupings" standard as "too indeterminate to provide concrete guidance to courts faced with verdict specificity questions." *Schad,* 501 U.S. at 635, 111 S.Ct. 2491, 115 L.Ed.2d 555. See also *Fryer v. Nix* (C.A.8, 1985), 775 F.2d 979, 992; *United States v. Bolts* (C.A.5, 1977), 558 F.2d 316, 326, fn. 4, in which the Fifth Circuit limited its own *Gipson* holding to cases in which the judge specifically permits a nonunanimous verdict by instructing the jurors that they could disagree on which alternative act applied as long as each juror found that one of them had been committed.

{¶ 56} Although we acknowledge that there has been criticism of the "distinct conceptual groupings" rubric, we conclude that the multiple-acts analysis remains a viable and valuable tool for state courts in their consideration of jury-unanimity questions. See, e.g., *Jones,* 96 Hawai'i at 170, 29 P.3d 351, and cases cited therein.

{¶ 57} Contrary to the dissent's suggestion that we rely too heavily on *Schad* for the proposition that the offense underlying the burglary is merely a means of committing the crime of burglary, our analysis also relies upon, and is consistent

with, an array of state appellate court decisions, cited below, on the specific issue presented here. And like many other state appellate courts, we find *Schad*'s framework more analytically compelling than the dissent's conclusion that due process requires a jury sitting in a burglary case to agree unanimously as to the specific offense, or offenses, that a defendant intended to commit inside the dwelling.

{¶ 58} The dissent's analysis would be more persuasive if the statute at issue here were one that necessarily involved the commission of multiple acts, such as Section 848(a), Title 21, U.S.Code, the statute at issue in *Richardson*. Section 848(a) forbids any person to engage in a "continuing criminal enterprise," i.e., "a continuing series" of felony violations of federal drug laws. Section 848(c)(1) and (2), Title 21, U.S.Code. The Supreme Court framed the issue before it in *Richardson* as "whether the statute's phrase 'series of violations' refers to one element, namely a 'series,' in respect to which the 'violations' constitute the underlying brute facts or means, or whether those words create several elements, namely the several 'violations,' in respect to *each* of which the jury must agree unanimously and separately." (Emphasis sic.) 526 U.S. at 817–818, 119 S.Ct. 1707, 143 L.Ed.2d 985. In answering that question, the court concluded that a jury must agree unanimously on the specific, underlying drug-code violations that compose the continuing criminal enterprise. Id. at 815, 119 S.Ct. 1707, 143 L.Ed.2d 985.

{¶ 59} Although a superficial reading of *Richardson* might lend support to the suggestion that a jury must also agree unanimously as to the underlying offense in a state burglary prosecution, a closer reading of *Richardson* and its progeny reveals that its holding is quite limited.

{¶ 60} The court's conclusion in *Richardson* was grounded in the unique, specific statute before it, which did not expressly set forth whether a "series of violations" was an individual element satisfied by unanimous agreement that a "series" of violations took place, or whether the statute required each "violation" to be proven as a separate element. That inquiry was critical in *Richardson* because to establish a violation of Section 848, Title 21, the government is required to show that the defendant committed multiple acts that constituted violations of federal drug laws. Put another way, because of the unique nature of the "continuing criminal enterprise" offense, each and every prosecution for a violation of Section 848 will entail presenting the jury with a multiple-acts case. That critical dynamic, which supports the need for jury unanimity, is notably absent in this case and renders *Richardson* inapposite to our analysis.

{¶ 61} Indeed, *Richardson* has not been cited by any state appellate court in a reported case analyzing the elements of the crime of burglary or the issue of jury unanimity in a state prosecution for burglary. To the contrary, its application to

offenses other than Section 848, Title 21 has been expressly—and consistently—rejected. See, e.g., *State v. Brothers* (2002), 151 N.C.App. 71, 81, 564 S.E.2d 603 (in an appeal from convictions for sex offenses, rejecting appellant's claim that the jury's instructions improperly allowed the jurors to reach a verdict that is not unanimous on the underlying acts and noting that *Richardson* is "limited to federal prosecutions under 21 U.S.C. § 848"); *State v. Yearwood* (2001), 147 N.C.App. 662, 669, 556 S.E.2d 672 (same limitation of *Richardson*, in appeal from convictions for breaking and entering and other offenses); *Nguyen v. State* (Aug. 10, 2001), El Paso App. No. 08–99–00135–CR, 2001 WL 898731, *1 (also limiting *Richardson* to the federal statute, in a sex-offense prosecution). Accord *Hoover v. Johnson* (C.A.5, 1999), 193 F.3d 366, 369–371, in which the court rejected a habeas petitioner's claim that his due process rights were violated by the trial court's denial of his request for a special ballot asking the jury to specify which overt act he committed in the conspiracy offense, noting that *Richardson* offered some support for the contention, but that "[f]urther consideration of *Richardson* reveals, however, that the Court did not therein, and has not elsewhere, explicated a constitutional requirement that state-court juries must agree to a single act that satisfies the overt act element of the relevant crime, and then identify that act in a special ballot." In cases addressing state offenses, it is clear that *Richardson* has not been a persuasive source of authority.[4]

{¶ 62} In the wake of *Richardson*, the states continue to hold that their rules and constitutional provisions requiring jury unanimity do not require that a jury unanimously agree as to the underlying offense that a defendant intends to commit in the course of a burglary. See, e.g., *State v. Griffin* (2005), 279 Kan. 634, 662–663, 112 P.3d 862; *Jones*, 96 Hawai'i 161, 29 P.3d 351. As the court noted in *People v. Griffin* (2001), 90 Cal.App.4th 741, 750, 109 Cal.Rptr.2d 273, although a state constitution may guarantee a defendant the right to a unanimous jury, "when a single crime can be committed in various ways, jurors are not required to unanimously agree upon the *mode* of commission." (Emphasis sic.) Thus, there is no requirement that the jury in a burglary prosecution unanimously agree that the defendant's intent on entering the home was the defendant's intent to steal from the victim, to imprison her, or to assault her. Id. at 752, 109 Cal.Rptr.2d 273. See also *State v. Luster* (1998), 48 Conn.App. 872, 878, 713 A.2d 277 ("Our review of the trial court's instruction leads us to conclude that it did not sanction a nonunanimous verdict simply because the jury was not required to

---

4. In fact, *Richardson* has not been widely successful as a vehicle for constitutional challenges to state statutes outlawing a "pattern" of sexual assaults or "continuous" sexual abuse, see, e.g., *State v. Fortier* (2001), 146 N.H. 784, 789–791, 780 A.2d 1243; *State v. Johnson* (2001), 243 Wis.2d 365, 369, 378–382, 627 N.W.2d 455; *State v. Ramsey* (App.2005), 211 Ariz. 529, 537, 124 P.3d 756. Such offenses are arguably more similar to the federal "continuing criminal enterprise" law than is burglary.

agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building"). The court in *People v. Griffin* further concluded that the California Supreme Court's decision in *People v. Failla* (1966), 64 Cal.2d 560, 569, 51 Cal.Rptr. 103, 414 P.2d 39, which held that the jury need not reach a unanimous conclusion as to which felony a defendant intended to commit in a burglary, retained its vitality after *Schad.* 90 Cal.App.4th at 751–752, 109 Cal.Rptr.2d 273. In fact, the court, which did not even mention *Richardson* as authority, held that *Schad* supported the rule announced in *Failla.* Id. at 752–753, 109 Cal.Rptr.2d 273. We agree.

{¶ 63} In doing so, we hold that Ohio's burglary statutes proscribe a single crime that may be carried out in more than one manner or method. As the court explained in *State v. Hammer* (1997), 216 Wis.2d 214, 220, 576 N.W.2d 285, "[t]he language of the [burglary] statute indicates that the crime here is one single offense with multiple modes of commission. The pertinent language states that burglary is committed when an actor unlawfully enters a dwelling with an 'intent to * * * commit a felony.' The statute does not set forth any alternatives with respect to the intent element. The language indicates that the emphasis is on the fact that the defendant had the intent to commit a felony and it does not matter which felony formed the basis of that intent. There are different means of accomplishing this crime, but the different ways do not create separate and distinct offenses." In adopting that reasoning, we believe that the nature of the burglary offense is particularly suitable to the *Schad* analysis and contrary to the limited *Richardson* rule.

{¶ 64} The majority in *Richardson* was concerned, in part, with the breadth of the "continuing criminal enterprise" statute, which incorporated more than 90 sections of the federal drug laws proscribing a wide range of conduct, from improperly removing drug labels to endangering human life while manufacturing a controlled substance. See *Richardson,* 526 U.S. at 818–819, 119 S.Ct. 1707, 143 L.Ed.2d 985. Implicitly, the court seemed troubled by the lack of moral equivalence among all the minor and major offenses that could form the underlying violations.

{¶ 65} Conversely, the *Schad* rule applies when the jury's focus is on a defendant's acts that *are* morally equivalent. Thus, a defendant charged with murder is not deprived of any right to jury unanimity if some jurors believe that he committed the murder with premeditation while others believe that he committed it as part of the commission of a felony, because those actions may legitimately be characterized as morally equivalent. "Whether or not everyone would agree that the mental state that precipitates death in the course of robbery is the moral equivalent of premeditation, it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral

disparity bars treating them as alternative means to satisfy the mental element of a single offense." *Schad,* 501 U.S. at 644, 111 S.Ct. 2491, 115 L.Ed.2d 555. Similarly, we do not require all jurors to agree whether a defendant raped a victim orally, vaginally, or anally, because all three constitute "sexual conduct" in violation of the rape statute. In such cases, there is no violation of the jury unanimity rule as long as all of the jurors agree that there was sufficient penetration to satisfy the "sexual conduct" element of the crime of rape. *Thompson,* 33 Ohio St.3d at 11, 514 N.E.2d 407. It is no great leap to extend this rationale to the crime of burglary. To the contrary, that evolution began in other states more than 40 years ago. See, e.g., *Failla,* 64 Cal.2d at 567, 51 Cal.Rptr. 103, 414 P.2d 39 (noting that the question of whether jurors must agree to the underlying felony in a burglary case "appears to be one of first impression in a burglary context, but we are not without guidance," citing cases rejecting a unanimity requirement as to the state's theory in a murder or theft case).

{¶ 66} In enacting and amending our burglary statutes over the past 35 years, the General Assembly has removed distinctions between daytime and nighttime break-ins, the type of property entered, and the motive for entering. See 1974 Committee Comment to R.C. 2911.11. The legislative focus in enacting the burglary statute was not on the underlying offense, but rather, on "the reduction or elimination of the high risk of harm to persons that exists when one forcibly enters an occupied structure." *State v. Ramirez,* Clermont App. No. CA2004–06–046, 2005-Ohio-2662, 2005 WL 1271907, ¶ 25. In the context of burglary, the legislature has erased the moral distinctions between the underlying crimes that the defendant intended to commit after he gained access, requiring only that the crime be a felony. There is nothing unusual about that legislative prerogative, and nothing about it that is constitutionally offensive.

{¶ 67} Ohio's definition of burglary is similar to Arizona's definition of first-degree murder in that both use alternative bases for the intent element, both are widely used, and both have a long history. See *People v. Griffin,* 90 Cal.App.4th at 752, 109 Cal.Rptr.2d 273. "According to Justice Scalia's concurrence in *Schad,* this factor alone would be sufficient to conclude that due process is not offended * * *." Id. at fn. 8. "It is clear from the statute that the legislature focused on the intent to commit a felony, not any particular felony. Therefore, all the felonies are conceptually similar for the purposes of unanimity because each and every felony provides the predicate intent element. There is no difference in penalty irrespective of which underlying felony or combination of felonies was intended. Rather, it is [the defendant's] single entry into the dwelling with the requisite intent that constitutes the crime." *Hammer,* 216 Wis.2d at 222, 576 N.W.2d 285.

{¶ 68} Thus, a defendant charged with burglary is not deprived of a unanimous verdict "simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building. 'In situations where "the alternatives of the mens rea [intent] component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct." *State v. Suggs*, 209 Conn. 733, 763, 553 A.2d 1110 (1989). Here, the precise nature of the defendant's intent does not implicate any lack of unanimity regarding the defendant's conduct.' *State v. Marsala*, 43 Conn.App. 527, 539, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997)." (Brackets sic.) *Luster*, 48 Conn. App. at 878–879, 713 A.2d 277. See also *Griffin*, 90 Cal.App.4th at 752, 109 Cal.Rptr.2d 273, quoting *Schad*, 501 U.S. at 644, 111 S.Ct. 2491, 115 L.Ed.2d 555 (although the alternative bases of intent could be considered very different, "if premeditation and felony murder can reasonably be considered moral equivalents, so too can intent to steal, intent to assault by means likely to result in great bodily harm and intent to falsely imprison, at least to the extent that their moral disparity does not bar 'treating them as alternative means to satisfy the mental element of a single offense' "); *State v. Johnson* (1983), 100 Wash.2d 607, 626, 674 P.2d 145, overruled on other grounds, *State v. Bergeron* (1985), 105 Wash.2d 1, 711 P.2d 1000 (burglary statute describes only a single offense and, therefore, there is no need for jury unanimity on the underlying offense).

{¶ 69} We proceed with these considerations in mind.

{¶ 70} In determining whether jury instructions that allow the jury to disagree on the underlying crime in an aggravated-burglary case violate due process, a court must be guided by the evidence in the case before it and by general principles of fundamental fairness. See generally *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80–81.

{¶ 71} As previously indicated, R.C. 2911.11(A) requires proof that the defendant trespassed "with purpose to commit * * * any criminal offense." Contrary to the view taken by the court of appeals in this case, we do not discern in this language a statutory requirement that the jury be instructed on the elements of whatever offense the defendant intended to commit. We agree with the Supreme Court of Washington, whose burglary statute is similar to Ohio's, that "the specific crime or crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the * * * jury instructions * * *." (Emphasis sic.) *State v. Bergeron*, 105 Wash.2d at 16, 711 P.2d 1000.

{¶ 72} We do agree, however, that the state must prove the defendant's intent to commit a crime—"any criminal offense"—beyond a reasonable doubt. The

breadth of the phrase "any criminal offense" is such that in some cases, it may invite a fatally "patchwork" verdict based on conceptually distinct groupings of crimes or on multiple acts. We believe that in such cases, due process requires that the jurors must be instructed as to the specific criminal act(s) that the defendant intended to commit inside the premises. See *Johnson*, 46 Ohio St.3d at 105, 545 N.E.2d 636 ("where there appears a possibility of jury confusion in light of the allegations made and the statute charged, an augmented general instruction may be necessary to ensure that the jury understands its duty to unanimously agree *to a particular set of facts* " [emphasis added] ). We believe that in such cases, the usual general instruction on unanimity "would provide too little protection in too many instances." *United States v. Beros* (C.A.3, 1987), 833 F.2d 455, 461. A specific charge instructing the jury that it must be unanimous as to each component of the criminal offense the defendant had "purpose to commit" once inside the premises will help ensure against improper juror divergence.

{¶ 73} We think that it is preferable for the trial judge to instruct the jury in all aggravated-burglary cases as to which criminal offense the defendant is alleged to have intended to commit once inside the premises and the elements of that offense. Such instructions provide an important road map for the jury in its deliberations and help ensure that jurors focus on specific conduct that constitutes a criminal offense.

{¶ 74} Nevertheless, we do not require this instruction in every case. Prudence may strongly suggest such a precaution, but we are not persuaded that it is appropriate in all circumstances. Trial judges are in the best position to determine the content of the instructions based on the evidence at trial and on whether the case presents an alternative-means or multiple-acts scenario.

{¶ 75} In so holding, we reject the dissent's call to afford a defendant greater protection under the Ohio Constitution than he enjoys under the federal Constitution.

{¶ 76} We are, of course, free to determine that the Ohio Constitution confers greater rights on its citizens than those provided by the federal Constitution, and we have not hesitated to do so in cases warranting an expansion. See, e.g., *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115 (holding that the Ohio Constitution's Takings Clause affords greater protection than the corresponding federal provision).[5] But despite the fact that state

---

5. The dissent states that it is "dishearten[ed] to see that the majority suggests that property rights deserve more protection than do the liberty rights of an accused." The statement mischaracterizes our analysis, which does not in any way suggest that property rights are more important than an individual's liberty interest. Rather than ignoring a recognized constitutional right, we simply reject the dissenting justices' unwarranted expansion of due process protections.

constitutions are a vital and independent source of law, see, generally William J. Brennan Jr., The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights (1986), 61 N.Y.U.L.Rev. 535, as an institution, "this court has not, on most occasions, used the Ohio Constitution as an independent source of constitutional rights." *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 42, 616 N.E.2d 163, fn. 8. We must be cautious and conservative when we are asked to expand constitutional rights under the Ohio Constitution, particularly when the provision in the Ohio Constitution is akin to a provision in the U.S. Constitution that has been reasonably interpreted by the Supreme Court. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 28 and 29 (O'Connor and Stratton, JJ., dissenting) (where the language used by the federal and Ohio Constitutions is "virtually identical," it is "illogical" to suggest that the provisions should be interpreted differently). The United States Supreme Court has stated, we think quite reasonably, that the federal Due Process Clause (a virtual mirror of our own "due course of law" provision) does not require juror agreement on which of several alternative means the defendant employed in committing the charged offense. *Schad,* 501 U.S. at 643–644, 111 S.Ct. 2491, 115 L.Ed.2d 555. Our analysis of similar constitutional provisions should not be driven simply by disagreement with the result reached by the federal courts' interpretation.

### *Plain Error*

{¶ 77} We now turn to the court of appeals' conclusion that the trial court's failure to instruct the jury on the underlying offense in this case constituted plain error. We disagree.

{¶ 78} Plain error is not present unless but for the error complained of, the outcome of the trial would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Accord *United States v. Meshack* (C.A.5, 2000), 225 F.3d 556, 580, modified in part on other grounds (2001), 244 F.3d 367 (rejecting the argument that *Richardson* required reversal of a money-laundering conviction because the jury was not instructed that it had to agree on the appellant's mens rea for the offense when the defendant did not request more than a general unanimity instruction and did not show that unfairness resulted). Such a conclusion should be exercised with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus. Given our disposition, we find that no error was committed in this case. We also find no risk of a manifest miscarriage of justice.

{¶ 79} There is no suggestion of jury confusion in this case. The jury did not question the meaning of the "any criminal offense" element, and the state did not

present evidence of an array of crimes that Gardner may have intended to commit in Lee's home. Indeed, the evidence here supported only crimes within a single conceptual grouping—assault, felonious assault, or menacing.

{¶ 80} If, as the state argues in this court, the underlying crime was felonious assault against Pippins in Lee's home, we are not persuaded that the outcome of the trial would have been different if the instructions had specified that offense and its elements. After all, the jury was well aware of those elements from other portions of the instructions, and its acquittal of Gardner and Justice indicates that it considered those elements carefully.

{¶ 81} The acquittal, however, does not suggest that Gardner's aggravated-burglary conviction cannot stand. To the contrary, the Supreme Court has made clear that a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable. " 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.' " *United States v. Powell* (1984), 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461, quoting *Dunn v. United States* (1932), 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356. Accord *Harris v. Rivera* (1981), 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530. "[I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall for the Government at the defendant's expense." *Powell*, 469 U.S. at 65, 105 S.Ct. 471, 83 L.Ed.2d 461. As *Powell* notes, "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." Id.

{¶ 82} Our law has long recognized the same principle. See, e.g., *State v. McNicol* (1944), 143 Ohio St. 39, 47, 27 O.O. 569, 53 N.E.2d 808, citing *Griffin v. State* (1868), 18 Ohio St. 438, 1868 WL 45. More recently, we have reiterated it by citing *Powell*'s holding, see, e.g., *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, as have the courts of appeals. E.g., *State v. Taylor*, Cuyahoga App. No. 89629, 2008-Ohio-1626, 2008 WL 885822, ¶ 10; *State v. Smathers* (Dec. 10, 2000), Summit App. No. 19945, 2000 WL 1859836, *8. One such decision, the Sixth District's opinion in *State v. Miller*, Erie App. No. E–02–037, 2003-Ohio-6375, 2003 WL 22828969, is illustrative here.

{¶ 83} There, the court reviewed a jury's verdict that found the appellant guilty of aggravated burglary but acquitted him of attempted murder and domestic violence. The court of appeals found that even though the appellant had been acquitted of attempted murder and domestic violence for conduct arising out of the same incident as the aggravated burglary, the evidence was sufficient to find that the appellant had entered the victim's home without her permission and

threatened to kill her, conduct sufficient to demonstrate an intent to commit a criminal offense. Id. at ¶ 13. It affirmed the conviction, notwithstanding the acquittals. We reach the same conclusion.

{¶ 84} Gardner's acquittal on the felonious-assault charge is not dispositive, because there is no requirement in Ohio law that the criminal offense underlying an aggravated-burglary charge be completed in order for the latter charge to stand. R.C. 2911.11(A) (an accused need only have a "purpose to commit" a criminal offense); *State v. Castell* (Aug. 20, 1992), Cuyahoga App. No. 61352, 1992 WL 205130.

{¶ 85} Nor are we persuaded that a manifest injustice occurred when we view the case in the manner in which the case was initially presented to the jury, i.e., that the felonious-assault charge arose from the allegation that Gardner, Justice, or both shot at Pippins upon their return to Lee's home.

{¶ 86} Although the jury was not given a specific crime to consider in determining Gardner's intent in entering Lee's home, a reasonable jury could conclude that Gardner's attack on Pippins or his threat to kill him was a "criminal offense" of some form, even without the benefit of the elements of assault, R.C. 2903.13, or menacing, R.C. 2903.22. Indeed, Ohio courts have recognized that one who forcibly enters a dwelling in the manner depicted in this case may reasonably be assumed to do so with the intent to commit a criminal act within. See, e.g., *State v. Robinson*, Cuyahoga App. No. 82261, 2003-Ohio-4666, 2003 WL 22053499, ¶ 24. Consistent with the court of appeals in this case, we find that Gardner's conviction in this case is not against the manifest weight of the evidence and that there is sufficient evidence to sustain it. Accordingly, we find no manifest injustice.

{¶ 87} Given the evidence and the inference arising from it that Gardner entered Lee's home to commit an assault on Pippins, the absence of any apparent jury confusion about the "any criminal offense" element, and that the state did not present a multiple-acts case or suggest that the "any criminal offense" element was satisfied by crimes of distinct conceptual groupings, we find no risk of manifest injustice here. Accordingly, we reverse the court of appeals' decision and remand the cause to the court of appeals to consider the claims of error it did not address in its opinion.

Judgment reversed
and cause remanded.

Lundberg Stratton and Cupp, JJ., concur.

O'Donnell, J., concurs in judgment only.

Moyer, C.J., and Pfeifer and Lanzinger, JJ., dissent.

**O'DONNELL, J., concurring in judgment only.**

{¶ 88} I concur only in the judgment to reverse the judgment of the court of appeals and remand for further appellate review on assignments of error not addressed in the appellate opinion.

---

**LANZINGER, J., dissenting.**

{¶ 89} The lengthy opinion of the majority essentially concludes that the phrase "with the purpose to commit * * * any criminal offense" in R.C. 2911.11(A) does not constitute an essential element of aggravated burglary. I dissent and would hold that this phrase defines the mens rea that the state must prove beyond a reasonable doubt, and therefore, I would require as a matter of due process that the jury be instructed on the elements of the particular crime that a defendant intended to commit "in the structure or in the separately secured or separately occupied portion of the structure" before it may convict for the offense of aggravated burglary.

### Due Process Rights

{¶ 90} The majority states baldly that there is no due process right guaranteeing that criminal defendants receive a unanimous verdict in Ohio state courts. Even though the United States Supreme Court requires juror unanimity in federal trials and has never applied that requirement to the states, Ohio Crim.R. 31(A) says that "[t]he verdict shall be unanimous" in a criminal trial. And as made clear in *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368, due process mandates "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." If the jury is not instructed on every essential element of the offense charged, including the element of mens rea, it cannot find beyond a reasonable doubt every fact necessary to constitute the crime charged, and the *Winship* principle is violated. *Hoover v. Garfield Hts. Mun. Court* (C.A.6, 1986), 802 F.2d 168, 172. Furthermore, this court is free to impose greater constitutional protections than those required by the federal Constitution. See *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762. We have held that "[t]he 'due course of law' clause of Section 16, Article I of the Ohio Constitution, has been considered the equivalent of the 'due process of law' clause in the Fourteenth Amendment" and that "[d]ecisions of the federal Supreme Court have often been quoted by this court as giving the true meaning of the guaranties of the Ohio Bill of Rights." *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544, and 545, 21 O.O. 422, 38 N.E.2d 70. We have also held that, together, "Section 10, Article I of the

Ohio Constitution and the Sixth Amendment to the United States Constitution secure to a criminal defendant the right to a fair trial." *State ex rel. Vindicator Printing Co. v. Watkins* (1993), 66 Ohio St.3d 129, 138, 609 N.E.2d 551. To say then that the only guarantee of juror unanimity is that provided by Crim.R. 31(A) is to overlook the significant protections afforded by the Ohio Constitution.

{¶ 91} The majority does acknowledge that we have not hesitated to provide greater state constitutional protection in "cases warranting an expansion," but then cites the civil case of *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115. It is disheartening to see that the majority suggests that property rights deserve more protection than do the liberty rights of an accused and rejects the statement that Ohio due process requires unanimity on the issue of the underlying criminal offense that the defendant had a purpose to commit for a conviction under R.C. 2911.11(A).

### Due Process Applied

{¶ 92} Neither *Schad v. Arizona* (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, nor *Richardson v. United States* (1999), 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985, controls our decision on whether the underlying intended crime supporting a charge of aggravated burglary is an element of the offense of aggravated burglary or whether it is merely the means of establishing the mens rea element. Even the *Schad* plurality, which the majority argues is determinative on this point, left this question open for state courts. Id., 501 U.S. at 639, 111 S.Ct. 2491, 115 L.Ed.2d 555.

{¶ 93} In its rush to apply *Schad,* the majority characterizes the intent to commit "any criminal offense" as simply a "means" that satisfies the mens rea element, rather than the element itself. The culpability element resides in the phrase "with purpose to commit * * * any criminal offense." R.C. 2911.11(A). The mens rea for aggravated burglary, therefore, is purpose. Purpose and intent are synonymous. *White v. Maxwell* (1963), 174 Ohio St. 186, 188, 22 O.O.2d 140, 187 N.E.2d 878. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against *conduct of a certain nature,* regardless of what the offender intends to accomplish thereby, it is his specific *intention to engage in conduct of that nature.*" (Emphasis added.) R.C. 2901.22(A). Thus, for aggravated burglary, the definition of the culpable mental state calls for specific information to be given to the jury, that being the elements of the specific offense that the defendant is alleged to have intended to commit. Otherwise, the jurors will be unable to agree on the nature of the conduct intended or the defendant's purpose to engage in that conduct.

{¶ 94} Jurors must have guidance on whether certain behavior is criminal; that is why we instruct jurors on what the state must prove beyond a reasonable

doubt before they may reach a verdict of guilty. Without further instruction on which crime the defendant is alleged to have had the purpose to commit, the jury is left to its own devices and may conceivably convict based upon subjective and incorrect beliefs that certain behavior is a crime, even when it is not. As noted in *Richardson*, there is concern that attempting to prove a defendant's involvement in numerous underlying violations "significantly aggravates the risk (present at least to a small degree whenever multiple means are at issue) that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire." Id., 526 U.S. at 819, 119 S.Ct. 1707, 143 L.Ed.2d 985.

{¶ 95} The holding in this case should be simple—that the trial judge must instruct a jury in an aggravated burglary case on the elements of the criminal offense that the defendant is alleged to have had the purpose to commit once inside the premises. But instead of mandating that judges follow the current Ohio Jury Instructions in aggravated burglary cases by identifying and informing the jury that the underlying intended offense is an element of the crime, the majority holds that a trial judge must analyze whether the case involves "alternative means" or "multiple acts," whether the indictment is divided into two or more "distinct conceptual groupings," and whether the jury's focus is on a defendant's acts that are "morally equivalent." Then the trial court may decide if a more specific instruction is "preferable." The majority's rule is confusing, at the very least.

### Incomplete Jury Instructions

{¶ 96} "[T]he purpose of the jury instruction is to clarify the issues and the jury's position in the case." *Bahm v. Pittsburgh & Lake Erie RR. Co.* (1966), 6 Ohio St.2d 192, 194, 35 O.O.2d 307, 217 N.E.2d 217. As we noted in paragraph two of the syllabus in *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, "[a]fter arguments are completed, a trial court must *fully and completely* give the jury all instructions *which are relevant and necessary* for the jury to weigh the evidence and discharge its duty as the fact finder." (Emphasis added.)

{¶ 97} The Ohio Jury Instructions, while not binding legal authority, are helpful as an example of the generally accepted interpretation of the aggravated burglary statute in Ohio. The instructions inform jurors that they must agree that a defendant had the "purpose to commit the offense of" and then requires the judge to "insert [the] name of [the] criminal offense." 4 Ohio Jury Instructions (2000), Section 511.11. Comment 3 to Section 511.11 states, "The court must instruct the jury on the elements of the underlying criminal offense, together with the meaning of particular words and phrases." Id. By requiring the jury to specifically agree on the intended offense, the instructions treat the underlying intended crime as an element of aggravated burglary. I would hold

that the standard Ohio Jury Instructions are correct in treating the underlying intended crime in such a manner.

{¶ 98} A jury cannot be asked to decide if there is proof beyond a reasonable doubt that a defendant had the purpose to commit a criminal offense unless the jurors have been instructed on the definition of the particular offense intended. The fact that the statute does not specify a particular offense does not relieve the state of its burden to prove that an offense was intended. In closing statements to the jury, the state argued merely that Gardner's initial entry into Lee's home without permission constituted the aggravated burglary offense; however, these facts are insufficient to show Gardner's intent to commit any crime there.

{¶ 99} The trial court's instruction tracked the language of R.C. 2911.11(A)(2), but failed to identify or legally define the crime that Gardner had the purpose to commit. The majority states, "Although the jury was not given a specific crime to consider in determining Gardner's intent in entering Lee's home, a reasonable jury could conclude that Gardner's attack on Pippins or his threat to kill him was a 'criminal offense' *of some form*, even without the benefit of the elements of assault, R.C. 2903.13, or menacing, R.C. 2903.22." (Emphasis added.) In fact, the majority also states that the term "any crime" encompasses "every" and "all" criminal offenses recognized by Ohio.

{¶ 100} If, as the state insists in this case, Gardner intended to commit felonious assault on Pippins when he trespassed into Lee's home, the prosecution did not prove the mens rea element beyond a reasonable doubt unless the jury unanimously found that Gardner had trespassed "with purpose" to commit felonious assault. When the judge has failed to identify or instruct on the elements of the underlying crime intended, the jury's finding of proof beyond a reasonable doubt of the required mens rea element is called into question. When the jury has acquitted on the separate charge of felonious assault, the questions are even more serious.

{¶ 101} The majority thus permits a conviction for aggravated burglary even if no two jurors agree on the underlying crime that a defendant intended to commit. I would hold that because "with purpose to commit * * * any criminal offense" is an element of aggravated burglary, the majority's interpretation strips defendant of his right to have proof beyond a reasonable doubt on every element of the offense charged. As Justice White noted in his dissent in *Schad*, "it violates due process for a State to invoke more than one statutory alternative, each with different specified elements, without requiring that the jury indicate on which of the alternatives it has based the defendant's guilt." 501 U.S. at 656, 111 S.Ct. 2491, 115 L.Ed.2d 555 (White, J., dissenting). The majority goes even further by allowing the jury to speculate, without any instruction, on what criminal offense the defendant may have had the purpose to commit.

## Plain Error

{¶ 102} Not only would I require that a jury be instructed on, and unanimously agree on, the crime a defendant intended to commit as part of an alleged aggravated burglary, I would also hold that in this case the failure to do so constituted plain error. Crim.R. 52(B) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is not easily found; "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. In the context of jury instructions, we have held that failure to "separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error," but that under such circumstances plain error review requires an examination of the record in each individual case. *State v. Adams* (1980), 62 Ohio St.2d 151, 154, 16 O.O.3d 169, 404 N.E.2d 144, and at paragraph two of the syllabus.

{¶ 103} Of all the crimes with which he was charged, Gardner was convicted only of aggravated burglary. Although he was also charged with felonious assault, the jury ultimately found him not guilty of that offense. This acquittal raises additional questions over whether the jurors were unanimous in deciding exactly which crime Gardner intended to commit and whether the state carried its burden of proving the mens rea element of the crime of aggravated burglary beyond a reasonable doubt.

{¶ 104} The majority correctly notes that inconsistencies in a verdict do not necessarily require that a conviction be vacated. Majority opinion at ¶ 81. Here, however, the jury was never fully instructed on all elements of the offense of aggravated burglary. There was no unanimous jury interrogatory answered that Gardner had a purpose to commit a specific crime. Because the incomplete jury instructions resulted in a jury verdict that raises the question of whether aggravated burglary was proved beyond a reasonable doubt, Gardner's substantial rights were affected, resulting in a manifest injustice. I conclude that plain error does exist.

## Conclusion

{¶ 105} Because I would hold that the particular offense that was intended to be committed in the occupied structure is part of the mens rea element of aggravated burglary, and because the jury was not instructed on the particular offense that was intended to be committed, plain error occurred. I would affirm the decision of the court of appeals.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine and Carley J. Ingram, Assistant Prosecuting Attorneys, for appellant.

Richard A. Nystrom, for appellee.