[Cite as *State v. Hagler*, 2016-Ohio-5350.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS. 26548 and 26549 |
| | : | |
| v. | : | T.C. NO. 12CR0879 and 12CR1772 |
| | : | |
| SHAWN M. HAGLER | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___12th___ day of ___August___, 2016.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162 and MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorneys, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 E. Stroop Road, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} In this consolidated appeal, Shawn M. Hagler appeals from his convictions in Case No. 2012 CR 879 for intimidation of a witness and domestic violence and in Case No. 2012 CR 1772 for burglary, intimidation of a crime victim, failure to comply with an order or signal of a police officer, and domestic violence.   The trial court sentenced him

to concurrent sentences totaling 36 months in Case No. 2012 CR 879, to be served consecutively to an aggregate sentence of 10½ years in Case No. 2012 CR 1772. Hagler's driver's license was suspended for 20 years, and he was ordered to pay court costs.   For the following reasons, the trial court's judgments will be affirmed.

## I. Factual and Procedural History

{¶ 2} The State's evidence at trial revealed the following facts.

{¶ 3} Hagler was in a relationship with Shameekia Arnold for seven years, and they have two children together.   Arnold and Hagler began living together in 2006, when Arnold was pregnant with their first child.   In March 2012, Hagler and Arnold lived with their children on Reading Road in Dayton.

{¶ 4} On March 19, 2012, Kettering Police Officer Ryan Vandegrift observed a Cadillac Escalade travelling at approximately 60 mph in a residential area of Kettering with a speed limit of 35 mph.   Vandergrift followed the vehicle several miles towards Dayton and, after running the vehicle's license plate, learned that the vehicle was registered to Arnold.   On orders from his sergeant, Officer Vandegrift stopped chasing the vehicle, but he and other Kettering and Dayton police officers proceeded to the Reading Road address to which the vehicle was registered.

{¶ 5} Before the police arrived at her address, Arnold received a telephone call from her brother, Jerome, asking her to open the driveway gate.   Arnold opened the gate, and the Escalade drove to the front of the detached garage for her house.   Arnold testified that Hagler was driving the vehicle; her brother was in the passenger seat.

{¶ 6} Police officers arrived at the address soon thereafter and noticed an Escalade parked in the driveway.   Three individuals were at the residence: Arnold,

Jerome, and Hagler. The three were detained, and car keys were located in the front pocket of Hagler's pants. Both Hagler and Jerome appeared to be intoxicated. Both men were arrested.

{¶ 7} On April 16, 2012, Hagler was indicted for failure to comply with an order or signal of a police officer, arising from the March 19, 2012 incident. *State v. Hagler*, Montgomery C.P. No. 2012 CR 879.

{¶ 8} In the overnight hours of April 30, 2012, Arnold and Hagler got into an argument about Hagler's court case concerning the events of March 19. Arnold stated that Hagler was upset that Arnold had given a statement to the police that Hagler had been driving the Escalade. Arnold testified that the argument continued into the morning hours (approximately 6:30 a.m.), when she was preparing to get her children to day care and herself to a nursing orientation. Hagler followed her around, continuing to talk about how he "felt about everything." Arnold got into her van and started to pull into the street. Hagler jumped into the passenger seat and hit her in the jaw and the side of her head. Arnold jumped out of the van and ran down the street.

{¶ 9} Arnold called 911 as she ran down the block. At 6:33 a.m., an individual driving by heard a woman in nursing scrubs asking for someone to call the police; the individual also called 911. Dayton Police Officer Rob Durcil responded to a report of a possible assault at Arnold's address. Officer Durcil made contact with Arnold, and noted that she had a chipped tooth and swelling on her face.

{¶ 10} After the April 30 incident, Arnold told Hagler that he was no longer welcome at their residence, and within a few days, Hagler removed his belongings from the house. Arnold's sister, Taja, and Taja's two children began to live at the home.

{¶ 11} On May 25, 2012, Hagler was indicted in Case No. 2012 CR 879 on additional charges of intimidation of a crime victim (by force/threat) and domestic violence, based on his conduct on April 30.

{¶ 12} At approximately 5:00 a.m. on June 8, 2012, Arnold and Taja were awakened by the sound of someone at the front door. As Arnold was getting ready to look out the window, Hagler came in through the door, without permission, and walked through the house to Arnold's bedroom. Arnold testified that Hagler was "just yelling and like grabbing me and pulling and pushing me. And he almost put me through a glass table, my coffee table." Hagler took Arnold's phone from her hand and slammed it against the wall, breaking it.

{¶ 13} After Hagler broke Arnold's phone, Taja got her cell phone to call 911. Taja tried to pretend that she was calling her children's father. When Hagler noticed that Taja was making a phone call, he "instantly" came over to her, hit her on the chin with a closed fist, and tried to take Taja's phone; Arnold took the opportunity to run out of the house.

{¶ 14} Hagler noticed that Arnold was gone, and he ran after her, yelling at her. When Arnold was about three houses away, Hagler "got close to [her]" and hit her. Arnold fell to the ground, and Hagler repeatedly punched her, pulled her hair, and dragged her along the sidewalk. When neighbors came outside, Hagler released Arnold, and she ran toward the neighbors.

{¶ 15} A police cruiser arrived at the scene while Arnold stood near her neighbors. Hagler got into his Escalade and began to drive away. One of the police officers, Officer William McReynolds, stood in the roadway in front of the vehicle, put his hand up, and yelled an order for Hagler to stop. Hagler drove toward the officer, causing the officer to

jump out of the way. McReynolds radioed other officers for assistance. After briefly checking on the other individuals present, McReyolds also began to pursue Hagler. Although the Escalade was found crashed a short distance away, Hagler was not apprehended that day. A warrant was issued for his arrest.

{¶ 16} On October 12, 2012, Hagler was indicted for burglary (occupied structure/person present), intimidation of a crime victim (force/threat), failure to comply with an order or signal of a police officer (fleeing felony), and domestic violence, all based on his conduct on June 8, 2012. *State v. Hagler*, Montgomery C.P. No. 2012 CR 1772. Hagler was ultimately arrested on March 18, 2014.

{¶ 17} The trial court consolidated Hagler's two cases, and they were jointly tried to a jury in December 2014. Hagler waived counsel and represented himself at trial. The jury acquitted Hagler of failure to comply with an order or signal of a police officer, as charged in Case No. 2012 CR 879. He was found guilty of the remaining six charges. As stated above, Hagler received concurrent sentences totaling 36 months in Case No. 2012 CR 879 and an aggregate sentence of 10½ years in Case No. 2012 CR 1772, to be served consecutively for a total of 13½ years in prison. Hagler appeals from his convictions.

{¶ 18} Hagler died during the pendency of this appeal. Pursuant to App.R. 29(A), the State moved to substitute Hagler's appellate counsel as the party/representative for Hagler. We granted the State's motion. *State v. Hagler*, 2d Dist. Montgomery Nos. 26548 & 26549, Decision and Entry (Nov. 2, 2015). Accordingly, despite Hagler's death, this matter is properly before us for review on the merits of Hagler's appeal.

{¶ 19} Hagler raises one assignment of error, which pertains solely to his

conviction for burglary in Case No. 2012 CR 1772. In the absence of any assignments of error relating to Case No. 2012 CR 879, the judgment in Case No. 2012 CR 879 will be affirmed without further discussion.

## II. Jury Instruction on Burglary: Unanimity

{¶ 20} Hagler's assignment of error states:

The instruction to the jury pertaining to unanimity on an element of the offense of burglary, combined with a misstatement of law by the prosecutor concerning such unanimity, denied the Appellant a fair trial and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Constitution of the State of Ohio.

{¶ 21} In his sole assignment of error, Hagler claims that he was denied a fair trial, because the trial court improperly instructed the jury on burglary by stating that the jury need not be unanimous about the underlying offense. He further claims that the prosecutor also misstated the law regarding unanimity.

{¶ 22} Hagler was indicted for burglary, in violation of R.C. 2911.12(A)(2), which states that "[n]o person, by force, stealth or deception, shall * * * (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." The indictment identified the Reading Road address as the occupied structure, Arnold as the other person present, and assault as the criminal offense that Hagler had a purpose to commit.

**{¶ 23}** Hagler requested a bill of particulars.   The State responded:

Specifically, the State will prove that on June 8, 2012, in Montgomery County, Ohio, the Defendant entered the residence located at * * * Reading Road, by force, stealth or deception, when another person, other than the accomplice of the offender, was present with the purpose to commit any criminal offense, specifically the offenses of Assault, Domestic Violence, Menacing, Criminal Damaging, Disorderly Conduct and Intimidation of an Attorney, Victim or Witness in a Criminal Case.

**{¶ 24}** During the State's closing argument, the prosecutor described the evidence in support of the burglary offense, as follows:

The elements of burglary are these.   We know it was June 8th. * * * City of Dayton * * *.   The Defendant, Shawn Hagler.

And I want to talk about force.   Force is not breaking the door down. You're going to get an instruction from the Judge.   You don't have to break a door to commit burglary.   You have to open it.   That's enough force.

When another person is present, Shameekia and Taja Arnold -- this Defendant even told you that Shameekia and Taja were in the home that morning -- with purpose to commit in the structure any criminal offense. You heard from Shameekia and you heard from Taja.   This Defendant committed domestic violence to Shameekia Arnold and he assaulted Taja Arnold when he punched her in the face.

You need to know that criminal intent can be formed at any point while you're trespassing.   This Defendant didn't have to go in there thinking

he was going to punch Taja in the face. He just had to do it, knowingly, once he was inside.

This Defendant didn't need to go inside that house, thinking he was going to punch Shameekia or grab her face or push her to the ground. He just had to do it when he was in there. And you're further going to be instructed -- you don't even have to agree completely that each of them did it. You just have to agree that he committed the offense. Some of you can agree that Taja was punched. Some of you can agree that Shameekia was punched. As long as all of you agree that this Defendant committed a criminal offense inside that house, he committed burglary.

**{¶ 25}** The State revisited the elements for burglary in its rebuttal closing argument. With respect to intent, the prosecutor stated:

[The prosecutor] explained to you that that intent to cause a criminal offense doesn't need to be proven beforehand. That intent can form after he's already done that trespass. We don't need to prove that he wanted to go over there to punch her. We don't need to improve that it was -- prove that it was his purpose to go over there and punch her or Taja.

We don't have to prove that he even wanted to punch Taja or Shameekia before he got there. He trespassed because he wasn't allowed to be there and then he assaulted both of those women. That's what the burglary's about. What he did once he trespassed into that home and trespass – he's not allowed to be there and he goes in there. He used force by opening the door. He told you he opened the door. * * *

**{¶ 26}** After closing arguments, the trial court instructed the jury on the offenses of which Hagler was charged. The trial court addressed the intent portion of the burglary offense and whether the jury needed to be unanimous as to intent, explaining:

* * * Before you can find the Defendant guilty of burglary, you must find beyond a reasonable doubt that on or about the 8th day of June, 2012 and in Montgomery County, Ohio, the Defendant by force, stealth, or deception trespassed in an occupied structure located at * * * Reading Road, Dayton, Ohio, or in a separately secured or separately occupied portion of the occupied structure, when another person, to wit, Shameekia Arnold, other than an accomplice of the Defendant, was present with purpose to commit therein any criminal offense.

A Defendant may form the purpose to commit a criminal offense at any point during the -- a course of the trespass.

* * *

You may consider whether the Defendant had the purpose to commit in the occupied structure, either of two different offenses. Either assault or domestic violence.

Before you can find the Defendant had the purpose to commit in the occupied structure the offense of assault, you must find beyond a reasonable doubt that the Defendant had the purpose to knowingly cause or attempt to cause physical harm to Taja Arnold.

* * *

In addition, as I indicated you may also consider whether the

Defendant had the purpose to commit in the occupied structure, the offense of domestic violence.

You must find beyond a reasonable doubt that on or about the 8th day of June, 2012 and in Montgomery County, Ohio, the Defendant knowingly caused physical harm to Shameekia Arnold, a family or household member.

* * *

Jurors are not required to unanimously agree on the specific criminal offense the Defendant intended to commit any occupied structure. Instead, all jurors must agree that the Defendant intended to commit an offense in the occupied structure.

{¶ 27} On appeal, Hagler claims that the trial court misstated the law when it instructed the jury regarding unanimity on the intent element of burglary and that this error was compounded by misstatements of law by the prosecutor during the State's closing arguments.

{¶ 28} " '[A] defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.' Jurors must also unanimously agree that the defendant is guilty of the offense charged before the jury can return a guilty verdict." (Citations omitted.) *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 37; *see* Crim.R. 31(A).

{¶ 29} The Ohio Supreme Court has made clear that, although Crim.R. 31(A) requires juror unanimity on each element of an offense, jurors "need not agree to a single way by which an element is satisfied." *Gardner* at ¶ 38. The court explained:

In determining whether the state has impermissibly interfered with a defendant's Crim.R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a reasonable doubt, the critical inquiry is whether the case involves "alternative means" or "multiple acts."

" ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

" ' "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." ' "

(Citations omitted.) *Gardner* at ¶ 48-50.

**{¶ 30}** Addressing the offense of burglary specifically, the supreme court held that Ohio's burglary statutes proscribe a single crime that may be carried out in more than one manner or method. *Gardner* at ¶ 63. Thus, a jury is not required to unanimously

agree as to the underlying offense that a defendant intends to commit in the course of a burglary. *Id.*; *see also State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 22-23.

{¶ 31} More recently, the Ohio Supreme Court rejected another defendant's claim that he was denied the right to a unanimous jury verdict on aggravated burglary because the jury was not instructed on the specific criminal offense that he intended to commit inside the residence. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239. In *Fry*, the jury instructions, which tracked the language of the statute, stated, "[Y]ou must find beyond a reasonable doubt that * * * the defendant did, by force, stealth, or deception, trespass in an occupied structure * * * with the purpose to commit in said structure, a criminal offense." Relying on *Gardner*, the supreme court found no plain error and held that "Fry was not deprived of a unanimous verdict when the jury was not instructed on the specific offense he intended to commit inside the residence." *Fry* at ¶ 124.

{¶ 32} Based on *Gardner* and *Fry*, we find no error in the trial court's jury instruction on burglary or in the prosecutor's statements during closing arguments that the jury need not agree as to whether Hagler intended to commit domestic violence against Arnold and/or assault her sister. The State asserted that Hagler had the purpose to commit an assault against Arnold and/or her sister, Taja, and based on the evidence, the jury could have reasonably concluded that Hagler intended to commit an assault against both women; the State's evidence established that, due to the nature of the relationship between Hagler and Arnold, an assault on Arnold would constitute domestic violence. The trial court did not err in failing to require the jury to be unanimous as to which

underlying offense Hagler intended to commit.

**{¶ 33}** Hagler's assignment of error is overruled.

### III. Conclusion

**{¶ 34}** The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Kirsten A. Brandt
Meagan D. Woodall
Charles M. Blue
Hon. Mary Katherine Huffman